[No. 43294.　En Banc.　January 10, 1975.]

ROBERT J. CATHCART *et al, Respondents,* v. WILLIAM R. ANDERSEN *et al, Petitioners.*

*Slade Gorton, Attorney General, James B. Wilson, Senior*

*Assistant,* and *Richard H. Holmquist, Assistant,* for petitioners.

*Timothy R. Fishel, David Kader,* and *Eugene Seligmann,* pro se.

WRIGHT, J.—The sole issue for our determination in this case is whether the Open Public Meetings Act of 1971, RCW 42.30 (hereinafter the Act) applies to the monthly meetings of the University of Washington law school faculty. We answer in the affirmative and uphold the decision of the Court of Appeals.

The University of Washington School of Law faculty governs the affairs of the law school by means of monthly meetings. These meetings have been held in secret. In the fall of 1970, the students at the law school directed a request to the faculty to have these meetings opened to them. The faculty responded by allowing four officers of the student body, but no others, to attend. In August of 1971, the legislature passed the Act and thereafter renewed efforts were made by students to open the meetings to the public based on the Act. The faculty refused the request and certain students filed suit requesting the following relief: (a) declaratory relief stating that the Act was applicable to the faculty of the University of Washington School of Law, (b) injunctive relief keeping the defendants from further violating or threatening to violate the Act in relation to meetings of the faculty of the University of Washington School of Law and, (c) assessment of the civil penalty and expense award pursuant to section 12 of the Act.

The trial court ordered summary judgment of dismissal for the reason that the faculty of the University of Washington School of Law was not considered the governing body of a public agency or subagency and the law school was not considered to be created by or pursuant to statute, ordinance or legislative act. On appeal, the Court of Appeals affirmed that part of the judgment denying the plaintiffs' claim for civil penalties and application for an injunc-

tion, but remanded the case with direction to the Superior Court to enter judgment declaring the Act applicable to official meetings of the dean and the faculty of the law school. Petitioners are now before this court seeking reversal of the decision of the Court of Appeals.

The resolution of this case turns on the construction that is to be given to the terms "public agency," "governing body" and "pursuant to statute." RCW 42.30.030 provides:

> All meetings of the *governing body* of 'a *public agency* shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter.

(Italics ours.) RCW 42.30.020(1)(a) and (c) define "public agency" as:

> (a) Any state board, commission, committee, department, educational institution or other state agency which is created by or *pursuant to statute,* other than courts and the legislature.

(Italics ours.) Or,

> (c) Any subagency of a public agency which is created by or pursuant to statute, ordinance or other legislative act, including but not limited to planning commissions, library or park boards, and other boards, commissions and agencies.

RCW 42.30.020(2) defines "governing body" as:

> [T]he multimember board, commission, committee, council or other policy or rule-making body of a public agency.

■■ The University of Washington is undeniably a state educational institution created by statute. Laws of 1889, § 1, p. 395; Laws of 1909, ch. 97, § 1. Likewise, the law school must be considered as being created "pursuant to statute." In *Knowles v. Holly,* 82 Wn.2d 694, 513 P.2d 18 (1973), this court construed the words "pursuant to" as meaning in conformity with or in the course of carrying out, implying that what is done is in accordance with an instruction or direction. *Cf. Fabianich v. Hart,* 31 A.2d 881 (D.C. Mun. App. 1943). It is not necessary that a statute

expressly create a subagency so long as there is an enabling provision which allows that subagency to come into existence, at some future date, as the need may arise. As early as 1862, the territorial legislature made provision for the creation of a school of law to serve the people of this state. Laws of 1862, § 9, p. 44, provides:

> The University shall consist of at least four departments.
>
> . . .
>
> 2d. *A department of law.*
>
> . . .
>
> These departments may be organized and such others added, as the regents shall deem necessary, and the state of the University fund shall allow.

(Italics ours.) More recent enabling provisions for the school of law can be found in RCW 28B.20.020, which provides:

> The aim and purpose of the University of Washington shall be to provide a liberal education in literature, science, art, *law*, medicine, military science and such other fields as may be established therein from time to time by the board of regents or by law.

(Italics ours.) and RCW 28B.20.060 which provides:

> The courses of instruction of the University of Washington shall embrace as exclusive major lines, *law*, medicine, forest products, logging engineering, commerce, journalism, library economy, marine and aeronautic engineering, and fisheries.

(Italics ours.)

The board of regents, in fulfilling its duty to meet the aim and purpose of the university, established the school of law pursuant to RCW 28B.20.130(4). Not only was the law school facility itself created pursuant to statute, but the faculty of each college or school was empowered, as agent of the board of regents, to govern the immediate affairs of the respective college or school. RCW 28B.20.200 provides that:

> The faculty of the University of Washington shall consist of the president of the university and the professors

and the said faculty shall have charge of the immediate government of the institution under such rules as may be prescribed by the board of regents.

■ It is not enough, for purposes of the Act, that the faculty of the law school, when holding their monthly meetings, represent the board of regents or meet under statutory authorization. For the Act to apply, the faculty must be considered a "governing body," which is to say that it is a "policy" or "rule-making body." RCW 42.30.020(2). Prior to 1971, the faculty of the law school possessed certain de facto rule-making and policy-making powers. In 1971, RCW 28B.10.528 was enacted which expressly allowed the board of regents to delegate and subdelegate authority from the board to the president or the designee of the president.

In accordance with RCW 28B.10.528, the board of regents formalized certain prior de facto delegations by way of a resolution dated April 30, 1971. The stated purpose of the resolution was to

. . . insure that . . . prior delegations of authority effected in modes other than by resolution will not be invalidated.

As the result of the various formalized delegations, the faculty of the law school came to exercise considerable power over the governing of the school. During the academic year of 1970-71, the law school faculty, sitting as a multimember, decisionmaking body, unilaterally approved curriculum additions and deletions, amended the scholastic standards required of its students, exercised its authority to provide adequate instruction and supervision of its students, and took final action related to the sponsorship of guest speakers and other extra-curricular uses of law school facilities.

The law school faculty has also become the recipient of a quasi-legislative authority delegated to it by the president. A short time after the enactment of RCW 28B.10.528, the president issued an executive order, later codified as § 1323 in the faculty handbook, authorizing the

University Faculty to enact regulations for the immediate government of the University and to share responsibility with him and the academic deans in such matters as:

1. educational policy and general welfare;
2. policy for regulation of student conduct and activities;
3. scholastic policy, including requirements for admission, graduation, and honors;
4. approval of candidates for degrees;
5. criteria for faculty tenure, appointment, and promotion;
6. recommendations concerning the University budget;
7. formulation of procedures to carry out the policies and regulations thus established.

■ ■ Petitioners have suggested that the Act should not apply because faculty action is always ultimately subject to whatever rules the board of regents should choose to issue, or executive orders the president should make, and, therefore, the committee is not truly a "governing body." We disagree. We believe that the purpose of the Act is to allow the public to view the decisionmaking process at all stages. The decisions of the faculty are "conditional" only in an abstract hypothetical sense and the board of regents adopts faculty actions almost as a matter of course. The legislature in the enacting section of the Act (RCW 42.30.010) states, in some of the strongest language we have seen in any legislation, that:

The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

In RCW 42.30.910, it is stated:

The purposes of this chapter are hereby declared remedial and shall be liberally construed.

In affirming the decision of the Court of Appeals, we feel

that the legislative intent and purpose is being complied with. In *Board of Pub. Instruction v. Doran*, 224 So. 2d 693 (Fla. 1969) in connection with Florida's own open meetings act, appropriately dubbed "Sunshine Law," the Florida Supreme Court said at page 699:

> The right of the public to be present and to be heard during all phases of enactments by boards and commisions is a source of strength in our country. During past years tendencies toward secrecy in public affairs have been the subject of extensive criticism. Terms such as managed news, secret meetings, closed records, executive sessions, and study sessions have become synonymous with "hanky panky" in the minds of public-spirited citizens. One purpose of the Sunshine Law was to maintain the faith of the public in governmental agencies. Regardless of their good intentions, these specified boards and commissions, through devious ways, should not be allowed to deprive the public of this inalienable right to be present and to be heard at all deliberations wherein decisions affecting the public are being made.

The decision of the Court of Appeals is hereby affirmed.

HALE, C.J., FINLEY, HUNTER, HAMILTON, STAFFORD, and BRACHTENBACH, JJ., and CUNNINGHAM and SODERLAND, JJ. Pro Tem., concur.