Judith FAIN et al.

v.

FACULTY OF the COLLEGE OF LAW
OF the UNIVERSITY OF
TENNESSEE et al.

Court of Appeals of Tennessee,
Eastern Section.

March 11, 1977.

Certiorari Denied by Supreme Court
June 20, 1977.

Beauchamp E. Brogan, Knoxville, for defendants-appellants.

Dorothy B. Stulberg, Oak Ridge, for plaintiffs-appellants.

OPINION

SANDERS, Judge.

Suit was filed by a number of students in the College of Law against the Dean and

faculty members of the College of Law of the University of Tennessee. The purpose of the suit was to have the Court hold that meetings of the faculty and meetings of committees composed of faculty members and students were subject to the Tennessee Open Meetings Act under T.C.A. § 8–4401, et seq.

The complaint seeks an injunction against such meetings' being held without admitting the public. It seeks to require adequate notice be given of the meetings and to require minutes of the meetings to be published.

The Chancellor held the provisions of T.C.A. § 8–4401, et seq., are applicable to such meetings. He held that notice of such meetings should be given. He enjoined the Defendants from holding meetings without complying with the Act. He held the Act did not prohibit voting by secret ballot at the meetings. He denied Plaintiffs' request for attorneys' fees. He also suspended the injunction pending appeal.

Both sides have appealed and assigned error. The Defendants say it was error for the Court to hold their meetings were subject to the Act. The Plaintiffs say it was error for the Court to hold that a vote could be taken by secret ballot. They also say it was error for the Court to deny their request for attorneys' fees and to suspend the injunction pending this appeal.

■ There is virtually no dispute as to the material facts in the case. The case turns on one simply question—Do the meetings of the faculty and committees of the College of Law constitute *the meeting of a "governing body" of a public body with authority to make decisions for or recommendations to a public body*, as set out in the Act?

As pertinent here, T.C.A. § 8–4402 provides:

"All meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Tennessee constitution.

" 'Governing body' means the members of any public body which consists of two or more members, with the authority to make decisions for or recommendations to a public body on policy or administration.

" 'Meeting' means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter."

To determine whether or not the meetings are within the Act we need to look at the organizational structure of the University of Tennessee and the committees within the College of Law.

The affairs of the University are governed by a Board of Trustees. Article VI of the Charter of the University of Tennessee provides as follows:

"SECTION 1. The governing body of the University shall be a Board of Trustees consisting of five ex officio members and eighteen additional appointive members. . . . ."

The By-laws of the University provide: Article 1, SECTION 1.—

"THE BOARD OF TRUSTEES, which is the governing body of The University of Tennessee, shall have full and complete control over its organization and administration, also over its constituent parts and its financial affairs. . . ."

SECTION 2.—

"THE BOARD OF TRUSTEES SHALL:

"(a) Establish policies controlling the scope of the educational opportunities to be offered by the University and also policies determining its operation in general; however, the planning and development of curricula shall be the function of the faculties; . . . ."

The Board of Trustees governs the affairs of the College of Law in the same manner as the other colleges in the University. The University is organized in pyramid fashion with the Board of Trustees occupying the position of final authority at the top of the structure. The Board of Trustees formulates policies for the governance of the University and implements its policies through a chain of command through the President who, in turn, en-

trusts the administration of affairs concerning the various colleges through the Vice-Chancellor of Academic Affairs who, in turn, directs the administration of University policy through the Deans of the various colleges in the University. It is the Dean of the College and not the faculty of the college that is held directly accountable in this chain of command.

The Deans of the colleges are the chief administrative officers of their respective colleges, but cannot formulate policies that govern the college. These policies must come from the Board of Trustees. Nor can the Dean make recommendations to the Trustees. The Dean has the sole responsibility for the functions of his college. The individual members of the faculty in the College of Law have no authority over the way and manner the college is run. Nor do they have authority to make decisions for or recommendations to the governing body of the University.

The predecessor Deans of the College of Law, prior to the present Dean Pennegar, consulted with members of the faculty very infrequently concerning the functions of the College. One witness described Dean Pennegar's predecessor on faculty consultation by saying he might stop you in the hall to ask you a question, make a note and stick it in his watch pocket, and that was the last you would hear of it.

When Dean Pennegar came to the University in 1971 he started soliciting "input" from the faculty. He began forming committees among the faculty, in many cases with student members, to advise him and assist him in decision making. Although the number of committees may vary from year to year, at the time of the trial of this case there were some 14 committees covering such things as admission standards, curriculum, re-admission, faculty appointments, legal clinics, etc. The Dean determines the size and members of the committees, defines their purposes and limits of activity. He may dissolve any or all of the committees at any time. He may adopt or reject recommendations of the committees. If recommendations are made which he is

without authority to implement he may pass them on to the Vice-Chancellor of the University. The Dean prepares the agenda for the committee and faculty meetings and presides over the meetings. There are no provisions in the Charter or By-Laws of the University authorizing the committees and they exist at the will of the Dean.

The Plaintiffs insist that since these committees have authority to make recommendations to the Dean and since the Dean passes some of these recommendations on to the Vice-Chancellor who, in turn, may pass them on to the President of the University who, in turn, may pass them on to the Board of Trustees, this makes the members of the faculty a "governing body" and their meetings within the meaning of the Act.

We cannot agree. The committees exist by virtue of having been created by the Dean. They derive their authority from the Dean. Their authority is to make recommendations to the Dean. The Dean is not a public body, he is an administrative officer. Consequently, the faculty meetings and committee meetings of the College of Law are not subject to the provisions of the Act.

The Chancellor, in his memorandum opinion, relies heavily on a decision recently handed down by our Supreme Court in the case of *Dorrier v. Dark*, Tenn., 537 S.W.2d 888 (1976), to support the proposition the meetings are within the Act. We believe the Chancellor's interpretation of the language of the Court in *Dorrier* is too expansive. The Court held that meetings of the Metropolitan Board of Education were subject to the provisions of the Open Meetings Act, thereby rendering the Board's action terminating Dark as a teacher in the Metropolitan school system void. The Court's ruling was primarily concerned with constitutional issues and held: (1) The Act was not unconstitutionally vague; (2) nor was it unconstitutionally broader in scope than its caption; and (3) it did not infringe upon rights of free speech of members of governing bodies.

*Dorrier* is factually distinguishable from the case at bar. In that case it was stipu-

lated the Metropolitan Board of Education was a governing body. The defendants in *Dorrier* asserted the term "public body" as used in the definition of "governing body" in the Act was so uncertain that men of common intelligence must necessarily guess as to its meaning and differ as to its application. The Supreme Court did not find the Act to be ambiguous as to its application and stated as follows at page 892 of its opinion:

"It is clear that for the purpose of this Act, the Legislature intended to include any board, commission, committee, agency, authority or any other body, by whatever name, whose origin and authority may be traced to State, City or County legislative action and whose members have authority to make decisions or recommendations on policy or administration affecting the conduct of the business of the people in the governmental sector."

The Chancellor, in his memorandum opinion, reasoned that, since the University of Tennessee was created by action of the state legislature and the Board of Trustees was created by the state legislature to govern the University, the meetings of the faculty and committees of the College of Law were "traceable" to state legislative action through the Board's delegation of authority to various individuals and groups of individuals in the structure of the University to administer its policies, thereby bringing such meetings within the Act.

We cannot agree with the Chancellor's interpretation. What the Supreme Court said must be considered in light of reasonable application. While it is true the existence of the University and the Board of Trustees is traceable to an Act of the legislature, this does not mean that when the Dean of the College of Law asks a given number of faculty members to serve on a committee to assist him in decision making, the committee has its genesis in the legislature.

The Court, in *Dorrier*, also stated the bar should not take the opinion as being an advisory opinion as to the application of the Act in every instance. It is quite clear the

Court considers such determinations to be purely factual in nature, the result being dependent on the facts in each individual case.

Plaintiffs contend that, while in form the Board of Trustees is the governing body of the University, in substance it is actually the faculty who govern the College of Law.

The proof does not support this assertion. The University of Tennessee is organized in such manner that it leaves no doubt where the power to govern lies.

The Plaintiffs insist the faculty has certain governing functions expressly reserved in the By-Laws of the University. They refer to Article I, Section 2(a) of the By-Laws of the University, which states ". . . the planning and development of curricula shall be the function of the faculties."

■ If this provision of the By-Laws can be construed a delegation of authority to the faculty, those meetings of the faculty pertaining to curricula matters might be subject to the Act. However, the individual college faculties have no authority to affect changes in the curriculum of their respective colleges, nor does the faculty of a college, as such, have the authority to make recommendations pertaining to the curriculum of any authority outside of the college. The faculty may make recommendations pertaining to the curricula but, unless the Dean approves the recommendation or elects to pass it to the Undergraduate Council which will, in turn submit the recommendation to the Faculty Senate for final approval, the recommendation does not leave the College of Law. Therefore, even with respect to matters pertaining to curricula, the faculty does not exercise any governmental authority, nor does it have the power to make recommendations to a governing body, which would bring it within the provisions of the Act.

The parties stipulated meetings of the Undergraduate Council and the Faculty Senate are conducted in a public atmosphere but, since the issue as to the status of meetings held by the Faculty Senate and Undergraduate Council are not before us at this time, we shall not address it.

Plaintiffs also assert the law faculty is a governing body within the meaning of the Act because the faculty must necessarily perform governmental functions with respect to the establishment of institutional policies in order to retain its accreditation with various professional accrediting organizations such as the American Bar Association and the Association of American Law Schools in compliance with University directive that all colleges be fully accredited by profession accrediting organizations for the discipline.

Although the Plaintiffs assert this as argument, they cite us to no proof or authority to support it.

The requirement of the Association of American Law Schools, Article 6, Section 4, alluded to by Plaintiffs, states:

"A faculty of high competence and suitable size, vested with primary responsibility for determining institutional policies."

This merely requires the faculty have primary or initial responsibility and not final authority. The A.A.L.S. requirements are guidelines and failure to totally comply will not result in automatic loss of accreditation. Article 2, Section 2–2 of the Association of American Law Schools, states:

"In determining whether a school fulfills and can continue to fulfill the obligations of membership, the controlling issue is the overall quality of the school measured against the standards of quality articulated in the Requirements of Article 6. The statements of Approved Association Policy and the Regulations are designed to provide guidance in making this assessment. They are not meant to be taken as implying that formal compliance with their specific terms is necessarily equivalent to satisfaction of the qualitative requirements, or that departure from any of their specific terms is automatically demonstrative of qualitative failure."

Plaintiffs cite, and the Chancellor relied on, *Cathcart v. Andersen*, 85 Wash.2d 102, 530 P.2d 313 (1975), wherein the Supreme Court of Washington affirmed the Court of Appeals which held faculty meetings at the University of Washington Law School were subject to the state's open meetings act, to support the proposition that meetings of law faculties are "meetings" of the "governing body" of the law school. The result reached in *Cathcart v. Andersen, supra,* is distinguishable from the case at bar in that the University of Washington law faculty was authorized to act as a governing body. At page 315, of 530 P.2d of its opinion the court said:

"Not only was the law school facility itself created pursuant to statute, but the faculty of each college or school was empowered, as agent of the board of regents, to govern the immediate affairs of the respective college or school."

This is clearly not the situation presented in the case at bar.

Since neither the meetings of the Dean's advisory committees nor the meetings of the faculty of the College of Law meet the criteria of a "governing body" within the provisions of the Act, the Defendants' first assignment of error is sustained.

Our ruling on this assignment makes the assignments of error by the Plaintiffs moot.

The remaining assignments of the Defendants are pretermitted.

The decree of the Chancellor is reversed. The Plaintiffs' complaint is dismissed.

The costs of this appeal, together with the costs in the Trial Court, are taxed to the Plaintiffs.

PARROTT, P. J., and GODDARD, J., concur.