[No. 57757-9.   En Banc.   January 9, 1992.]

SALMON FOR ALL, ET AL, *Appellants*, v. THE DEPARTMENT OF FISHERIES, *Respondent*.

*Dennis D. Reynolds, Daniel W. Ferm,* and *Williams, Kastner & Gibbs,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Fronda C. Woods, Assistant,* for respondent.

GUY, J. — Salmon For All, Pierre Marchand, and Les Clark (hereinafter collectively Salmon For All) challenge a trial court's order denying their motion for summary judgment and granting summary judgment to the Washington State Department of Fisheries. Salmon For All brought action in Thurston County Superior Court alleging the Open Public Meetings Act of 1971 applied to negotiations by the Department of Fisheries with Oregon, federal, and

tribal fisheries officials in the development of Columbia River salmon fishing regulations. We affirm the trial court.

## FACTS
### Procedural History

In October 1987, Salmon For All (SFA) brought action alleging the Department of Fisheries of the State of Washington (Fisheries) since 1985 had been violating the requirements of RCW 42.30, the Open Public Meetings Act of 1971 (OPMA) in its negotiations with Oregon, the United States Government, and Indian tribal fisheries officials in the development of Columbia River salmon fishing regulations. Other nontribal fishing organizations previously had brought action in the United States District Court for Oregon challenging the Columbia River Fish Management Plan, alleging it had been negotiated in violation of the Washington OPMA. This challenge was rejected in *United States v. Oregon*, 699 F. Supp. 1456 (D. Or. 1988).

On November 13, 1989, SFA filed its second amended complaint alleging that under the OPMA's definitions, the officials of Washington, Oregon, the federal government, and treaty tribes were the "governing body" of Fisheries, and that the Columbia River Compact, an interstate entity, was also the "governing body" of Fisheries. The conclusion reached by those allegations was that those groups were subject to the OPMA as governing bodies of Fisheries, as was Fisheries. Summary judgment was sought by both SFA and Fisheries. The Thurston County Superior Court granted summary judgment to Fisheries, declaring in a letter opinion:

> It appears that the Open Public Meetings Act does not apply to a public agency governed solely by one individual agency director — or to a committee established by such agency director, unless the committee is specifically created by or pursuant to statute.

Clerk's Papers, at 754.

SFA appealed to the Court of Appeals, and we granted a motion to transfer on the ground that the case involved an issue of broad public import.

### Factual History

Commencing in 1985, representatives of Fisheries have met with their Oregon counterparts, United States federal officials, and members of several Pacific Northwest Indian treaty tribes concerning management of the annual Columbia River salmon fishery. The meetings are one part of a multilayered process of managing salmon populations and fisheries. Salmon, as migratory or anadromous fish, hatch and spawn in fresh water upriver, but spend much of their life cycle in the ocean. For this reason, the management and conservation of salmon is not purely a local matter but involves international, federal, interstate, state and tribal regulations. Cooperation is therefore essential in fisheries management to maintain this valuable resource.

The United States and Canada cooperate under treaties pursuant to direction of the Pacific Salmon Commission to regulate ocean harvesting of salmon native to both Canadian and United States rivers. Salmon in ocean waters between 3 and 200 miles off the coast of California, Oregon and Washington are under the federal jurisdiction of the Pacific Fishery Management Council. This Council includes representatives appointed by the United States Department of Commerce, the coastal states of the Northwest, and Idaho. The Pacific Fishery Management Council sets catch quotas from run projections arrived at by fishery biologists; and after these catch quotas are subtracted, an estimate may be made of Columbia River salmon runs.

Salmon entering the Columbia River are managed interstate under the Columbia River Compact. The Compact, which consists of representatives of the governments of Washington and Oregon, negotiates fishing locations, times and quotas pursuant to agreement between Washington and Oregon. This Compact has been ratified by Congress. The Compact divides the Columbia River into six commercial fishery zones and estimates maximum supportable catches and seasons with an eye toward conservation.

For many years, a great effort has been made to create agreements for the management of fishing, with much

resulting controversy and litigation. The federal courts have ordered Washington, Oregon and treaty tribes to negotiate comprehensive management agreements prior to participation in the annual Pacific Fishery Management Council. The negotiations have been ordered so as to prevent chaos caused by an "every man for himself" attitude in the parties appearing at the Council. These negotiations are monitored by the United States District Court for Oregon through its continuing jurisdiction under the authority of a preliminary injunction re 1983 treaty fall fishing filed in *United States v. Oregon*, No. 68-513 (D. Or. filed Sept. 1, 1983). Since 1988, meetings are conducted pursuant to the Columbia River Fish Management Plan, created by decree of the federal court in *United States v. Oregon*, 699 F. Supp. at 1469. In that same decision, the Federal District Court determined that the OPMA was not applicable to meetings pursuant to the Columbia River Fish Management Plan. 699 F. Supp. at 1467. Since 1985, Washington, Oregon and regional tribal officials also have been meeting in what is termed the "North of Falcon" process, named after Cape Falcon, a peninsula on the Oregon coast. During the "North of Falcon" meetings, some of which are public and some of which are closed, the parties attempt to negotiate a consensus for management of Columbia River salmon once projections are prepared by the respective fisheries biologists. "North of Falcon" recommendations and proposals are presented to the Columbia River Compact for endorsement or rejection. Fisheries routinely adopts as its regulations guidelines first adopted by the Columbia River Compact. While the Columbia River Compact is not an agency of the State of Washington, pursuant to the Compact the Director of Fisheries defers to the Compact's agreed-to limitations on the regulatory authority of Fisheries and adopts as Fisheries regulations only those quotas and management policies adopted by the Columbia River Compact. RCW 75.08.070.

Fisheries is a public agency of the State. RCW 43.17-.010(5). The Director of Fisheries possesses full decision-making authority over the Department. RCW 75.08.014.

The Columbia River Compact, a multistate entity, is the chief regulatory authority over non-Indian commercial salmon fishing on the Columbia River. The Director of Fisheries and his Oregon counterpart may only adopt regulations consistent with the Columbia River Compact.

SFA contends that the OPMA's requirements apply to the meetings of any group that negotiates or discusses regulations that become rules of Fisheries. This would include the meetings attended by representatives of Fisheries with their Oregon counterparts, federal officials, members of Pacific Northwest treaty tribes, as well as meetings of the Columbia River Compact, at which there is a representative of Fisheries. In support of this contention, SFA cites the legislative declaration contained in RCW 42.30.010 of the OPMA which states:

> The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.
> The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

Fisheries argues that the negotiation meetings between Washington, Oregon, federal officials, and Indian tribes were not meetings of the governing bodies of Washington public agencies. Further, Fisheries contends the decisions arising from those meetings are not binding on Fisheries as they are only recommendations to the Columbia River Compact, and that the Columbia River Compact is not a public agency of the state government. Finally, Fisheries argues that the OPMA does not apply to Fisheries because the act does not apply to public agencies governed by a sole individual.

ISSUES

1. Does Washington's OPMA apply to a public agency which vests full decision-making authority in an individual director rather than in a multimember body?

2. Does Washington's OPMA apply to meetings of the Columbia River Compact?

3. Does Washington's OPMA apply to negotiations involving officials of the State of Washington with officials of other states, federal authorities, and tribal leaders, where the negotiations may ultimately result in rules which are adopted by a Washington agency?

4. Did the trial court properly grant summary judgment in favor of the Washington State Department of Fisheries and not to SFA?

We hold the OPMA does not apply to agencies of the State of Washington for which the decision-making authority is placed in an individual director as opposed to a multimember body. The OPMA does not apply to negotiations of employees of the State of Washington with third parties that are not binding on the agency, nor to the Columbia River Compact, as it is not a "governing body" of Fisheries. Summary judgment was properly granted to Fisheries.

ANALYSIS

A

The trial court determined that the OPMA does not apply to Fisheries because the act does not apply to public agencies governed by a sole individual.

The OPMA states in pertinent part:

> All meetings of the *governing body* of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the *governing body* of a public agency, except as otherwise provided in this chapter.

(Italics ours.) RCW 42.30.030.

"Governing body" is defined by RCW 42.30.020(2) as follows:

> "Governing body" means the *multimember* board, commission, committee, council, or other policy or rulemaking body of

a public agency, or any committee *thereof* when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment.

(Italics ours.)

██ ██ While Fisheries is a public agency, it is a single-agency department where the Director is vested with full decision-making authority under RCW 75.08.014. There is no "governing body", as defined, at Fisheries since there is no multimember rule-making body — rather, there is a single director management. As Fisheries is governed by an individual director who has full decision-making authority, and agencies which are, in fact, operated under full decision-making power of a single director are excluded from the OPMA, Fisheries is exempt from the OPMA's requirements.

SFA cites *Cathcart v. Andersen*, 85 Wn.2d 102, 530 P.2d 313 (1975) as precedent for a public agency directed by a single president being bound by the public meeting requirements of RCW 42.30. The sole issue in *Cathcart* was whether the OPMA applied to meetings of the University of Washington Law School faculty. Pivotal to the *Cathcart* decision was the court's construction of the terms "public agency", "governing body" (under RCW 42.30.030) and "state agency which is created by or pursuant to statute" (in RCW 42.30.020(1)(a) and (c)). However, at the University of Washington, a board of regents, a multimember entity, has ultimate policy-making authority. This organizational structure distinguishes the *Cathcart* facts from the situation at Fisheries in the present case.

B

The second issue concerns the OPMA's application to meetings under the Columbia River Compact. SFA contends the OPMA applies to the activities of those employees of Fisheries "who participate in a committee established at least in part by the executive choice of the Director of Fisheries". This "committee", which SFA submits exercises actual or de facto authority over regulation of non-Indian

salmon fishing in the Columbia River, is the Columbia River Compact. SFA complains that the Columbia River Compact merely "rubberstamps" the recommendations of the "North of Falcon" negotiations, and that Fisheries in turn merely rubberstamps the recommendations of the Columbia River Compact.

■■ The OPMA does not apply to an interstate compact between the States of Washington and Oregon, as such an entity is not a "governing body" of Fisheries under RCW 42.30.020 and RCW 42.30.030. The plain language of the statutes applies the term "governing body" to the internal authority of the agency only, not an entity outside the public agency, or one to which an agency sends representatives. Nor is the Columbia River Compact an "instrument" that has been "created" by the people of the State of Washington as envisioned by RCW 42.30.010.

■ Moreover, Fisheries correctly notes that the Columbia River Compact became an instrument of federal law when ratified by Congress under *Cuyler v. Adams*, 449 U.S. 433, 440, 66 L. Ed. 2d 641, 101 S. Ct. 703 (1981). Ninth Circuit precedent indicates that interstate compact affairs are only subject to state law if the compact's terms agree so. *Seattle Master Builders Ass'n v. Pacific Northwest Elec. Power & Conserv. Planning Coun.*, 786 F.2d 1359, 1371 (9th Cir. 1986), *cert. denied*, 479 U.S. 1059 (1987). We cite these cases as additional authority for holding the Compact meetings are not subject to the OPMA.

## C

■ The third issue addresses the question of whether the OPMA applies to negotiations between the representatives of Fisheries, the State of Oregon, and treaty tribe officials. We determine it does not apply, for the same reason that the Columbia River Compact is not subject to the OPMA, as not being a governing body of Fisheries. Negotiations of employees of a state agency involved with other jurisdic-

tions do not constitute the "governing body" of that agency even though the agency may ultimately, after evaluation by a director or a "governing body", ratify or accept the results of the negotiations of its employees. The Director of Fisheries was not bound by the negotiations, although the effect was to defer to the recommendations. The Columbia River Compact does not compel acceptance of its recommendations. The signatories to the Compact make the negative assurance that they will not adopt regulations inconsistent with the recommendations of the Compact.

## D

■ The fourth issue concerns the grant of summary judgment in favor of Fisheries and denial of summary judgment to SFA. In reviewing the order of summary judgment, we engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). The material facts are undisputed and the issues for determination are matters of law only. Given our preceding analysis of applicable law, we determine the Thurston County Superior Court properly granted summary judgment in favor of Fisheries and properly denied summary judgment to SFA.

### CONCLUSION

The OPMA does not apply to public agencies governed by a single director and not possessing a multimember governing body. The OPMA does not apply to the Columbia River Compact and "North of Falcon" negotiations, as these are neither meetings of a governing body of Fisheries nor decisions binding on the agency. Summary judgment was properly granted to Fisheries and denied SFA. We affirm the trial court.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.