[No. 13095-9-III.  Division Three.  November 30, 1993.]

KLICKITAT COUNTY, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

P. Stephen DiJulio, Thomas M. Pors, and Foster Pepper Shefelman; Gerald A. Matosich, Prosecuting Attorney, for appellant.

Christine O. Gregoire, Attorney General, and John W. Hough, Deputy, for respondent State.

Lawrence C. Watters, for respondent Columbia River Gorge Commission.

THOMPSON, C.J. — Klickitat County brought this action for declaratory relief against the State of Washington and the Columbia River Gorge Commission, which was established by an interstate compact between Oregon and Washington. The Superior Court held it lacked subject matter jurisdiction over the action against the Commission. The court also held the State had no duty to indemnify the County for costs it might incur if it adopts a land use ordinance implementing the Commission's land management plan. The County appeals. We affirm.

In 1986, the United States Congress established the Columbia River Gorge National Scenic Area and gave its advance consent to an agreement between the states of Oregon and Washington for creation of the Columbia River Gorge Commission.[1] 16 U.S.C. §§ 544a, 544c(a)(1)(A). In 1987, the Washington Legislature ratified the Columbia River Gorge Compact and declared the provisions of the compact "to be the law of this state . . .". RCW 43.97.015. The compact creates the Columbia River Gorge Commission, giving it "the power and authority to perform all functions and responsibilities . . ." under the federal act "which is incorporated by this specific reference in this agreement." RCW 43.97.015.

The federal act provides that "[w]ithin three years after the date the Commission is established, it shall adopt a man-

---

[1] U.S. Const. art. 1, § 10 provides that "[n]o State shall, without the consent of congress, . . . enter into any agreement or compact with another state . . .".

agement plan for the scenic area." 16 U.S.C. § 544d(c). The Commission published its final draft management plan in July 1991. The federal act also provides that counties with land within the scenic area shall adopt a land use ordinance consistent with the Commission's management plan, subject to the Commission's approval. 16 U.S.C. § 544e(b)(2). If a county fails to adopt such an ordinance, the Commission has the responsibility for making and publishing "a land use ordinance setting standard for the use of non-Federal lands in such county". 16 U.S.C. § 544e(c)(1).[2]

On January 24, 1992, the County filed this action against the Commission and the State, asking for declaratory and injunctive relief. In order to enable it "to assess the impact of implementing the Management Plan through the adoption of appropriate ordinances and regulations . . .", the County asked the court to determine whether the State was liable under RCW 43.135.060 for costs it might incur in adopting, implementing, and administering new ordinances and programs pursuant to the Commission's management plan. RCW 43.135.060 provides:

> (1) The legislature shall not impose responsibility for new programs or increased levels of service under existing pro-

---

[2]The pertinent subsections of section 544e of the federal act read:

"(b) . . .

"(1) Within sixty days of initial receipt of the management plan, each county shall submit to the Commission a letter stating that it proposes to adopt a land use ordinance consistent with the management plan. If any county fails to submit such letter or fails to adopt a land use ordinance as provided in this section, the Commission shall carry out the requirements of subsection (c) of this section.

"(2) Within two hundred and seventy days of receipt of the management plan, each county shall adopt a land use ordinance consistent with the management plan . . .. Each county upon adoption of a land use ordinance shall promptly submit the ordinance to the Commission.

" . . . .

"(c) . . .

"(1) Within ninety days after making a determination that a county has failed to comply with the provisions of this section, the Commission shall make and publish a land use ordinance setting standard for the use of non-Federal lands in such county within the boundaries of the national scenic area . . .

"(2) SUBSEQUENT COMPLIANCE. — In the event the Commission has promulgated regulations pursuant to this section, a county may thereafter upon written notice to the Commission elect to adopt a land use ordinance . . .".

grams on any taxing district unless the districts are reimbursed for the costs thereof by the state.

The County also sought answers to the following questions:

4.3 Is the State liable:

4.3.1 under the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, § 16 of the Washington State Constitution to pay just compensation to any private landowner whose property is taken or damaged as a result of the adoption and implementation of the Act, the Compact, or the Management Plan; and

4.3.2 under RCW 43.135.060 to indemnify a County for any costs incurred in the defense and payment of just compensation claims by a private property owner who raises a takings claim with respect to the adoption and implementation of the Act, the Compact, or the Management Plan?

4.4 In the event the Commission is obligated to adopt a land use ordinance governing areas of the Counties which fall within the Scenic Area:

4.4.1 does the adoption of such an ordinance constitute assumption by the Commission of all other land use and regulatory authority with respect to non-federal lands located within the Columbia River Gorge National Scenic Area; and,

4.4.2 if not, what obligations remain for the Counties within such areas in the event any or all of the Counties decline to adopt any ordinance or regulation under the Management Plan?

Finally, the County asked the court to enjoin the Commission "from taking action to adopt and implement land use regulations under the Management Plan . . . until such time as a final decision has been rendered by this Court . . .". In its answer, the Commission raised lack of subject matter jurisdiction as an affirmative defense.

The parties agreed the questions were purely legal, and, therefore, they submitted the case to the superior court on arguments alone. The court held the federal act did not provide for state court jurisdiction in this type of action and therefore dismissed the Commission. As for the County's action against the State, the Superior Court held RCW 43-.135.060 did not apply because the federal act, not the State of Washington, prescribed the land use requirements for the scenic area. For the same reasons, the court rejected the County's argument that the State was liable to compensate

landowners for any takings which result from the land use requirements.

First, did the court err when it determined it did not have subject matter jurisdiction to hear the County's request for declaratory relief against the Commission?

16 U.S.C. § 544m(b)(6) provides:

> The State courts of the States of Oregon and Washington shall have jurisdiction —
>
> . . . .
>
> (B) over any civil action brought . . . against the Commission . . . pursuant to subsection (b)(2) of this section; . . .

Subsection (b)(2) allows persons or entities "adversely affected" to bring an action against the Commission for violating the act or failing to perform any duty under the act.[3]

■■ In *Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616, 619-20 (9th Cir. 1992), *cert. denied*, 114 S. Ct. 60 (1993), the court held the jurisdiction provisions of the act constituted a limited waiver of sovereign immunity. When the government consents to be sued, the waiver is strictly construed and not enlarged beyond what the language requires. *United States v. Nordic Village, Inc.*, ___ U.S. ___, 117 L. Ed. 2d 181, 188, 112 S. Ct. 1011 (1992). Allowing the present action for declaratory relief is beyond the scope of the limited waiver of sovereign immunity contained in subsection (b)(2). The County's action does not allege the Commission violated any provision of the act or that it failed to perform any act or duty required by the act. Thus, it does not come within the clear language of the statute.

■ Even if 16 U.S.C. § 544m is a jurisdictional statute rather than a limited waiver of sovereign immunity, the pre-

---

[3] 16 U.S.C. § 544m(b)(2) states:

"Any person or entity adversely affected may commence a civil action to compel compliance with sections 544 to 544p of this title —

"(A) against . . . the Commission . . . where there is alleged a violation of the provisions of sections 544 to 544p of this title, the management plan or any land use ordinance . . . or

"(B) against . . . the Commission . . . where there is alleged a failure of . . . the Commission . . . to perform any act or duty under sections 544 to 544p of this title . . .".

sumption that the state courts enjoy concurrent jurisdiction with the federal courts over federal questions is rebutted by explicit statutory directive. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478, 69 L. Ed. 2d 784, 101 S. Ct. 2870 (1981). The act provides that the state courts have jurisdiction in certain described cases arising under the act. If Congress had intended state courts to have plenary jurisdiction over all kinds of suits against the Commission, it would not have included the descriptions of certain cases in section 544m.

The County cites the following language from *Broughton*, at 621:

> We conclude that the effect of 16 U.S.C. § 544m(b)(4)-(6) is to vest the federal district courts of Oregon and Washington with jurisdiction over only those actions involving the Secretary [of Agriculture[4]], and to leave to the state courts jurisdiction over actions involving the Commission.

However, this holding must be read in the context of the facts of *Broughton*. There, the landowner brought inverse condemnation and declaratory judgment actions against the Commission in federal court. While the opinion does not detail the allegations made in the declaratory judgment action, it can be inferred the action involved a claim the Commission's interpretation of the act violated the takings clause. Such an action comes within subsection (b)(2), quoted above.

Accordingly, we hold the trial court properly dismissed the Commission for lack of subject matter jurisdiction.

Second, did the court err when it held the State had no duty to indemnify the County for costs it may incur in implementing the land use requirements of the act? The County argues the Legislature, by ratifying the Columbia River Gorge Compact, has "impose[d on it] responsibility for new programs or increased levels of service . . .". RCW 43.135.060(1).

■ RCW 43.135.060 was enacted by initiative in 1979. AGO 24, at 3 (1980). Its purpose is "[t]o prevent the Legislature from avoiding the effects of the state tax revenue limit by shifting responsibility for funding *state programs* to local

---

[4]*See* 16 U.S.C. § 544p.

governments . . .". (Italics ours.) *State v. Howard*, 106 Wn.2d 39, 43, 722 P.2d 783 (1985). We agree with the Superior Court that the land use requirements at issue here are not a state program and, therefore, the State has no duty to indemnify the County under RCW 43.135.060.

In *Cuyler v. Adams*, 449 U.S. 433, 440, 66 L. Ed. 2d 641, 101 S. Ct. 703 (1981), the Court held that "where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter . . . is an appropriate subject for congressional legislation, *the consent of Congress transforms the States' agreement into federal law under the Compact Clause*". (Italics ours.) According to Professor Tribe, "*Cuyler* underscores the Court's belief that federal supremacy is the core of the compact clause." L. Tribe, *American Constitutional Law* § 6-33, at 523 (2d ed. 1988).

In *Salmon For All v. Department of Fisheries*, 118 Wn.2d 270, 277-78, 821 P.2d 1211 (1992), the question was whether the Washington Open Public Meetings Act of 1971 (OPMA), RCW 42.30, applies to meetings under the Columbia River Gorge Compact. The court held at page 278 that "governing body" of a public agency, as that term is used in the OPMA, does not include entities outside the agency to which the agency sends representatives, such as meetings under the Columbia River Gorge Compact attended by representatives of the Department of Fisheries. As additional authority for holding that Compact meetings were not subject to the OPMA, the court cited precedent holding that "interstate compact affairs are only subject to state law if the compact's terms agree so." *Salmon For All*, at 278 (citing *Seattle Master Builders Ass'n v. Pacific Northwest Elec. Power & Conserv. Planning Coun.*, 786 F.2d 1359, 1371 (9th Cir. 1986), *cert. denied*, 479 U.S. 1059 (1987)).

The above authority makes clear that once two states enter into a compact with congressional approval, the compact is considered an instrument of federal law. The Commission's land management plan and the act's provisions relative to the plan are federally mandated, and do not constitute a state program. RCW 43.135.060 does not apply.

Third, the County argues the State is liable for the cost of paying and defending any inverse condemnation action brought by a landowner as a result of land use regulations adopted pursuant to the Commission's land management plan. In *Orion Corp. v. State*, 109 Wn.2d 621, 643-44, 747 P.2d 1062 (1987), *cert. denied*, 486 U.S. 1022 (1988), the court held that a taking which allegedly resulted from application of Skagit County's Shoreline Management Master Plan was the State's responsibility. It reasoned that the County adopted the master plan at the direction and control of the State, and thus, acted as the State's agent. *Orion*, at 643. Specifically, state regulations required the County to give preferences to certain uses and suggested that estuaries be left in their natural state. Moreover, the master plan became effective only after the State Department of Ecology approved it. *Orion*, at 643.

■ Here, the Commission, which is clearly a creature of federal law, has the authority to approve or disapprove the County's land use regulations. And the regulations themselves are to be patterned after the Commission's land management plan. If anything, the County will be acting as agent of the Commission, not the State.[5] Consequently, there is no state liability under *Orion*.

Affirmed.

MUNSON, J., and STAPLES, J. Pro Tem., concur.

---

[5]The Commission points to RCW 36.32, which sets forth the powers and duties of county commissioners, and provides that the exercise of authority pursuant to that chapter shall be "in conformity with the requirements of chapter 43.97 RCW, including the Interstate Compact adopted by RCW 43.97.015, and with the management plan regulations . . . adopted by the . . . commission . . .". RCW 36.32.550. The foregoing statute merely recognizes the supremacy of the federal act. Contrary to the County's argument, it does not make the County an agent of the State when it acts in conformity with that act.