Honorable Jeremy Randolph Lewis County Prosecuting Attorney 360 NW North Street Chehalis, WA 98532-1900
Dear Prosecutor Randolph:
By letter previously acknowledged, you have asked for an opinion on the following questions, slightly paraphrased for clarity:
1. In the absence of a contractual relationship, is a county sheriff obligated to accept custody of arrestees presented for booking by agents of the state (i.e., the Washington State Patrol (WSP), the Department of Fish Wildlife (DFW), the Department of Corrections (DOC), etc.)?
2. Does the answer to Question 1 depend on the nature of the crime charged (i.e., misdemeanor, gross misdemeanor, or felony)?
3. If there is a general duty to accept arrestees presented by state agents, may the county sheriff limit the hours within which the state may present [original page 2] arrestees or limit the number of arrestees that state agents may present for booking?
4. If there is a general duty to accept arrestees presented by state agents, does RCW 43.135.060 require the state to reimburse the county for costs associated with booking and housing the arrestees?
 BRIEF ANSWERS
1. A county jail has a duty to accept custody of arrestees presented for booking by any officers possessing the power to arrest and charge crimes alleged to have occurred within the county, no matter what the nature of the crime charged.
2. A county jail lacks the authority to (1) limit the hours within which officers may present arrestees for booking, or (2) limit the number of arrestees presented for booking.
3. The duty of a county jail to accept arrestees for booking is not a "new program or an increased level of service under existing programs" requiring the state to reimburse the county for costs associated with booking and housing the arrestees.
 ANALYSIS Background and Definitions
Your questions are about the authority of a county sheriff acting in the capacity of supervisor of the county jail. "Jail" is defined by statute as "any holding, detention, special detention, or correctional facility as defined in [RCW 70.48.020]." RCW 70.48.020(5). Counties are authorized to locate and operate jails and certain other correctional facilities.[1] RCW 70.48.180. A county may establish a department of corrections to be in charge of its jail, but if it does not create such a department, the chief law enforcement officer of the county has charge of the jail and of persons confined therein. RCW 70.48.090(3). Thus, when your opinion request refers to a "county sheriff," we understand that to be the sheriff acting in the capacity of supervisor of a county jail.
The opinion request makes reference to accepting custody of arrestees for "booking." Although there is no specific statutory definition for this term, we defined it in an earlier opinion as "the process of taking an arrested person to a city or county office to record the person's name and the offense with which he is charged." AGO 1988 No. 9, at 4-5.[2]
Your questions, then, [original page 3] concern the responsibilities of the county jail when an arrestee is presented at the jail for booking, and the officer who has made the arrest is not a member of the sheriff's department but is an employee of a state agency, such as a state patrol officer or some other state employee who has the power to make arrests for violations of the state's criminal laws.
1. In the absence of a contractual relationship, is a county sheriff obligated to accept custody of arrestees presented for booking by agents of the state (i. e., the Washington State Patrol (WSP), the Department of Fish Wildlife (DFW), the Department of Corrections (DOC), etc.)?
2. Does the answer to Question 1 depend on the nature of the crime charged (i.e., misdemeanor, gross misdemeanor or felony)?
In two previous formal opinions, we have considered at some length a question closely analogous to the one presented here and, in one of them, we touched upon the very issue raised in your opinion request. In AGO 1980 No. 21 (copy enclosed), we considered whether the county was obligated to pay the costs connected with custody of a prisoner originally arrested by an officer of a city or town, rather than by a county officer. We concluded that the county, and not the city or town, was financially responsible for the costs of booking and housing such an arrestee-based on language in RCW 36.01.060-which provides that "each county shall be liable to pay . . . the fees of the sheriff for maintaining prisoners charged with crimes." In reaching that conclusion, we considered (in passing) the costs of confinement for a prisoner arrested by a state patrol officer and specifically rejected the notion that the state would be liable for these costs. AGO 1980 No. 21, at 3.[3]
The request giving rise to AGO 1980 No. 21 concerned persons arrested and charged with felonies. In AGO 1988 No. 9 (copy enclosed), we concluded that the same analysis applied to police officers arresting for misdemeanors or gross misdemeanors. In the 1988 opinion, which concerned arrests made by city or town officers, we concluded that a county had no authority to charge the city or town for booking, jailing, or prosecution of arrestees presented for jail custody by city or town officers.[4] The 1988 opinion contains no discussion of costs associated with arrests by state officers.
While the 1980 and 1988 opinions do not directly answer your present questions, we adopt the same analysis. This begins with the proposition that, as a general rule, "counties are burdened with the cost of administering the criminal laws within their boundaries". State v. Agren, 32 Wn. App. 827, 828, 650 P.2d 238 (1982). In Agren, the Court of Appeals rejected a [original page 4] claim that a county was entitled to state reimbursement for court costs awarded to a criminal defendant, finding that these costs were properly taxable against the county and not the state.
In the area of criminal law enforcement, the law allows no drawing of a "bright line" between state and county responsibility. As the Agren opinion recognized, counties are political subdivisions of the state, and many of the functions they perform are "state" functions conducted through locally-chosen officers. Although the criminal law is primarily "state" law enacted by the Legislature, most criminal law enforcement is conducted by locally-elected officers (sheriffs, prosecuting attorneys, and judges). The allocation of the costs of the criminal justice system is based as much on history as on logic, and it derives from state statute.
The responsibility of counties to provide jails dates to the territorial days:
The county in which the court is held shall furnish the court house, a jail or suitable place for confining prisoners, books for record, stationery, lights, wood, attendance, and other incidental expenses of the court house and court which are not paid by the United States.
RCW 2.28.139 (derived from Laws of 1863, § 11, p. 425, and last amended by Laws of 1869, § 10, p. 421). In other words, since before statehood, state law has allocated to the counties certain costs associated with criminal law enforcement, and one of those is the duty to provide a jail.
As noted in the 1980 and 1988 opinions, the duty of a county to provide jail services (booking arrestees and housing prisoners when confined to the county jail) has never varied based on whether the officer making the arrest is a county officer (the sheriff or a sheriff's deputy), a city or town officer, or an officer on the state payroll. These officers have concurrent or at least overlapping jurisdiction to enforce the criminal laws,[5] and there is no logic in suggesting that the county has a duty to book and jail someone arrested by a sheriff's deputy but no duty to book or take custody of someone arrested for an identical offense by a state patrol officer or by an officer employed by another state agency.
The City and County Jails Act, codified as RCW 70.48, largely delineates the boundaries of state and local financial responsibility for housing prisoners. One provision limits the costs chargeable when a prisoner is temporarily confined to a jail. "Any jail within the state may be used for the temporary confinement of the prisoner with the only charge being for the reasonable cost of board." RCW 70.48.230. Another section provides that when a person imprisoned in a jail is sentenced to a state institution for a felony conviction, that person will be transferred to a state institution "before the forty-first day from the date of sentencing." RCW 70.48.240. The state generally assumes financial responsibility for such prisoners not later than the eighth day after sentencing, with certain exceptions. RCW 70.48.240, .410. The Office of Financial [original page 5] Management is directed by RCW70.48.440 to "establish a uniform equitable rate for reimbursing cities and counties for the care of sentenced felons who are the financial responsibility of the department of corrections and are detained or incarcerated in a city or county jail." Finally, the Department of Corrections has the authority to contract with counties concerning the costs of incarcerating prisoners not covered by RCW 70.48.400 through .450. RCW 70.48.460.
The pattern that emerges from these statutes is that counties have financial responsibility for costs associated with (1) booking and housing prisoners confined to the county jail before trial and sentencing, and for (2) defendants who are sentenced to a period of confinement in the county jail. Defendants sentenced to serve time in state institutions become the financial responsibility of the state eight days after sentencing (with certain exceptions not directly relevant here). This cost allocation applies no matter who made the arrest leading to detention. Thus, the county jail has no authority to refuse to accept prisoners presented for booking and detention by a state officer, just as the state would have no authority to refuse to accept prisoners originally arrested by sheriff's deputies and later sentenced to confinement in a state institution. Furthermore, the financial responsibility of the county does not depend on whether a person was arrested for committing a felony or a misdemeanor.
3. If there is a general duty to accept arrestees presented by state agents, may the county sheriff limit the hours within which the state may present arrestees or limit the number of arrestees that state agents may present for booking?
Since (as noted above) counties have the basic financial responsibility for the costs of the criminal justice system up to (and sometimes beyond) conviction and sentencing, it follows that a county may not arbitrarily escape this responsibility by limiting the hours during which it will accept arrestees for processing or by limiting the number of arrestees processed in a given time period. Crimes and arrests unfortunately happen at unpredictable hours and with unpredictable frequency. If an officer has occasion to apprehend a person for alleged criminal activity (perhaps after witnessing a crime, or in the process of executing an arrest warrant), the officer must have some place to deliver the arrestee for booking so the criminal justice process can continue. If the county jail is unavailable for this purpose (because it has limited hours or has limited the number of arrestees it will accept), the arresting officer has the following alternatives, all unreasonable: (1) foregoing the arrest, (2) delaying the arrest until a jail is available, (3) keeping the arrestee in the officer's personal custody for an extended period of time, or (4) delivering the arrestee to another more distant jail. Each of these alternatives would seriously hamper law enforcement and could also lead to other types of legal complications.
It is doubtful that a county sheriff could even limit the hours during which the jail would accept for booking persons arrested by the sheriff's own deputies, or limit the number of arrestees presented in a given time period. Sheriffs have a statutory duty "to make complaint of all violations of the criminal law, which shall come to their knowledge, within their respective jurisdictions." RCW 36.28.011. The state Supreme Court has held that this duty is mandatory, and sheriffs do not have discretion to determine whether a violation of the law is better handled by "surveillance" than by arrest and commitment. State v. Twitchell, 61 Wn.2d 403, 378 P.2d 444 (1963). If criminal activity occurs within a county, a sheriff cannot forego or delay making [original page 6] arrests because it would be costly or inconvenient for the jail to book and house more people. By the same token, the sheriff cannot refuse to book arrestees detained by other officers who made arrests in circumstances where the sheriff's deputies would otherwise have been responsible for enforcing the law.
4. If there is a general duty to accept arrestees presented by state agents, does RCW 43.135.060 require the state to reimburse the county for costs associated with booking and housing the arrestees?
RCW 43.135.060 is a statute limiting the extent to which the Legislature may impose new costs on local government without providing the funding associated with these costs. Originally enacted as an initiative (Laws of 1980, ch. 1, § 6 (Initiative 62)) and subsequently modified and reaffirmed by another initiative (Laws of 1994, ch. 2, § 5 (Initiative 601)), this statute provides that "[a]fter July 1, 1995, the legislature shall not impose responsibility for new programs or increased levels of service under existing programs on any political subdivision of the state unless the subdivision is fully reimbursed by the state for the costs of the new programs or increases in service levels." RCW43.135.060(1).
Although the courts have held that this statute requires the state to assume certain types of costs, the case law does not establish that the state is generally liable to reimburse political subdivisions for all costs associated with implementing or administering state laws. Each time, the courts have focused on the impact of specific legislation. In City of Tacoma v. State, 117 Wn.2d 348, 816 P.2d 7 (1991), the Supreme Court found that RCW 43.135.060 required the state to reimburse counties for the impacts caused by amendments to the Domestic Violence Prevention Act, which imposed specific enforcement duties on county officers beyond those set forth in previous law. Earlier, in State v. Howard,106 Wn.2d 39, 722 P.2d 783 (1985), the Supreme Court held that the state, rather than the county indigent defense fund, was responsible to pay expenses for prosecuting an indigent defendant where the prosecution was conducted by the attorney general pursuant to a new statute granting additional prosecuting authority to the state. On the other hand, the courts found no responsibility to reimburse local government for the cost of installing courtroom equipment to comply with new court rules (City of Seattle v. State, 100 Wn.2d 16, 666 P.2d 359 (1983)), or for the cost of complying with the rules adopted by the Columbia Gorge Commission, an agency formed by an interstate compact approved by the federal government (Klickitat Cy. v. State, 71 Wn. App. 760, 862 P.2d 629 (1993)).
Your questions concern the possible liability of the state for the costs of booking and housing arrestees presented by state officers to county jails. As discussed above, this is in no sense a "new program." Counties have borne the financial responsibility for booking and housing arrestees and maintaining jails since before statehood. Furthermore, we are unaware of any legislation enacted since 1995 which imposes a responsibility for increased levels of service on counties with respect to accepting arrestees presented for booking by state officers.[6]
[original page 7] Furthermore, as discussed above, the Legislature has crafted a scheme allocating which costs associated with keeping prisoners are borne by the state and which are borne by the county. Accordingly, we conclude that RCW 43.135.060 imposes no obligation on the state to reimburse the county under the circumstances described.
We trust this opinion will be of assistance to you.
Sincerely,
JAMES K. PHARRIS
Senior Assistant Attorney General
:pmd
[1] Cities and towns are also authorized to construct and operate jails. RCW 70.48.190. Regional jails may also be created and operated by agreement of two or more local governments, or by one or more local governments and the state. RCW 70.48.095. Counties and cities have authority to join in interlocal contracts for jail services. RCW70.48.090. From the phrasing of your questions, we have analyzed the law relating to county jails rather than city or regional jails, although the analysis is probably very similar.
[2] In 2000, the Legislature passed an act directing the Washington Association of Sheriffs and Police Chiefs to implement and operate an electronic statewide city and county jail booking and reporting system. RCW 36.28A.040(1) (Laws of 2000, ch. 3, § 1, as amended by Laws of 2001, ch. 169, § 3). This statute does not contain a definition of "booking", but it does list the minimum information the booking and information system should contain. RCW 36.28A.040(4).
[3] We also considered, and similarly rejected, the notion that a private citizen making a lawful arrest for commission of a crime and presenting the arrestee at the jail for detention would be financially liable for the costs of confining the arrestee pending further proceedings. AGO 1980 No. 21, at 3.
[4] In AGO 1988 No. 9, we recognized that counties might have a cause of action against certain cities to recoup costs resulting from the abolition of city or town criminal codes or termination of municipal courts. AGO 1988 No. 9, discussion at 6-9. See also RCW 3.50.800-.810 (these statutes do not appear to be pertinent to the present discussion).
[5] Note, for instance, that the powers of state patrol officers are to "exercise, throughout the state, such police powers and duties as are vested in sheriffs and peace officers generally, and such other powers and duties as are prescribed by law." RCW 43.43.030 (dating to Laws of 1933, ch. 25, § 2). Cf. RCW 36.28.010(1) (sheriff and deputies shall "arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses"). In other words, within a county, state patrol officers and sheriff's deputies have the same powers and duties with respect to criminal law enforcement.
[6] As noted earlier, the authority of state officers to arrest is essentially concurrent with that of the sheriff's office. In that sense, when a state patrol officer (for example) presents an arrestee at the jail for booking who is charged with committing some crime within the county, the state officer has performed duties (apprehending a possible criminal) which otherwise would have fallen on the sheriff's office. Thus, the acts of the state officer impose no obligations on the county which would not have fallen on the county anyway had a sheriff's deputy made the same arrest. Furthermore, the sheriff cannot argue that he or she might have saved the county money by not making the arrest in question, because the sheriff's duties in this regard are mandatory and not discretionary. State v. Twitchell, 61 Wn.2d 403, 378 P.2d 444
(1963).