[No. 45619. En Banc. January 4, 1979.]

VICKI L. LAMON, *Respondent,* v. MCDONNELL DOUGLAS CORPORATION, *Appellant.*

*Lane, Powell, Moss & Miller,* by *G. Val Tollefson,* for appellant.

*Richards, Rossano & Cornell,* by *Jerry Schumm,* for respondent.

*A. R. Hart* on behalf of Washington Association of Defense Counsel, amicus curiae.

HAMILTON, J.—This is a products liability case in which Vicki L. Lamon, plaintiff (respondent), sought to recover for injuries received when she fell through an open escape hatch while in the course of her preflight duties as an airline stewardess. Plaintiff alleged in her complaint against McDonnell Douglas Corporation, defendant (appellant), that the subject airplane was defectively designed and manufactured and that defendant negligently failed to properly warn of a dangerous condition. Defendant's motion for summary judgment was granted by the trial court based on the files and affidavits before it. The Court of Appeals reversed by a less than unanimous decision. *Lamon v. McDonnell Douglas Corp.,* 19 Wn. App. 515, 576

P.2d 426 (1978). The matter was then appealed to this court pursuant to RCW 2.06.030(e).

As we view it, the pivotal question posited by the appeal is whether the record before us reveals a genuine issue of material fact. If so, dismissal by way of summary judgment is inappropriate.

We answer the question in the affirmative. Accordingly, we affirm the conclusion of the Court of Appeals and reverse the trial court.

An agreed statement of facts can be summarized as follows:

On September 3, 1973, plaintiff was working as a stewardess for United Air Lines. Prior to a scheduled flight, plaintiff was among several stewardesses preparing the airplane, a DC-10, for flight. Two stewardesses were assigned work in the galley located beneath the first-class cabin. Those stewardesses proceeded to enter that area by way of the personnel elevator located aft of the first-class section. Subsequently, there was a power failure in the galley. Under these circumstances, stewardesses are instructed to use the emergency exit from the galley. One of the stewardesses in the galley did so use the emergency exit. She opened the hatch cover, which lifts up and is not hinged or attached to the aircraft. The hatch opens onto the aisle of the first-class section. The galley stewardess came partially through the hatch, announced the power failure, and went back into the galley. Contrary to instructions which she received during training, she left the hatch uncovered and unattended.

At the time the stewardess came through the hatch, plaintiff was visiting with other stewardesses in an area aft of the first-class section. Plaintiff saw the upper half of the stewardess' body emerge, and she heard her announce the power failure.[1]

---

[1] By way of excerpts from a deposition of plaintiff attached to an affidavit of counsel relating to the summary judgment motion, it appears plaintiff was aware that the emerging stewardess had returned to the galley and thereafter assumed

A short time later, plaintiff resumed her preflight duties. In order to distribute menus and earphones, she proceeded to the aisle where the hatch is located and backed down the aisle from the aft to the forward end of the first–class section. When she reached the open hatch, she fell into it and suffered injuries.

Defendant's attorney filed a motion for summary judgment and supported it with a memorandum, his own affidavit, and the affidavit of the Chief Interiors Engineer—Commercial for defendant. The substance of the latter affidavit was that the hatch was designed to afford a rapid and easy egress from the galley in the event normal means of egress were unavailable, and that it was necessary to locate it in an unobstructed area such as an aisle. No explanation relating to the hinging or nonhinging of the hatch cover was tendered.

Plaintiff's attorney submitted a memorandum in opposition to the motion for summary judgment and supported it by the affidavit of an engineer. The affidavit stated the affiant's business association, educational background, and his specialization in reconstruction and analysis of industrial and traffic accidents. The affiant then averred:

> On April 5, 1975, I examined the galley escape hatches on a DC–10 and a Boeing 747 airplane. The examination was made at the Seattle–Tacoma airport and the airplanes were part of the United Airlines fleet. Based on this examination it is my opinion that the design of the escape hatch cover on the DC–10 created an unreasonably dangerous condition for the cabin attendants. The condition was created because the hatch cover on the DC–10 consists of a loose panel, and in order to close the hatch after use the loose hatch cover has to be manually fitted into the hatch opening. If after using the hatch the user were to forget to replace the hatch cover the open hatch would constitute a serious hazard to cabin attendants who often have to walk backward in the performance of their duties. If when replaced the hatch cover

---

the hatch had been closed, although admitting she didn't know the latter to be necessarily so.

were not properly fitted into the hatch opening it could act as a trap door and endanger the person stepping on it. The dangerous features of the DC–10 hatch cover are not present in the design of the Boeing 747 galley hatch cover. While quite similar in other respects, the Boeing 747 hatch cover is hinged to the floor and is equipped with a spring device which automatically closes and keeps the hatch cover closed when the hatch is not in use.

Based on the agreed statement of facts, the affidavits, and the record of the case, the trial court dismissed the case.

In *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963), we observed:

> (1) The object and function of the summary judgment procedure is to avoid a useless trial; however, a trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact. *Preston v. Duncan,* 55 Wn. (2d) 678, 349 P. (2d) 605.

Pursuant to CR 56(c), a summary judgment is available only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

In *Morris v. McNicol,* 83 Wn.2d 491, 494–95, 519 P.2d 7 (1974), we considered the criteria for granting summary judgment, and determined that

> [a] "material fact" is a fact upon which the outcome of the litigation depends, in whole or in part. CR 56; *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963); *Zedrick v. Kosenski,* 62 Wn.2d 50, 380 P.2d 870 (1963).

> Moreover, the burden is on the party moving for summary judgment to demonstrate that there is no genuine dispute as to any material fact and all reasonable inferences from the evidence must be resolved against him. *Barber v. Bankers Life & Cas. Co.,* 81 Wn.2d 140, 500 P.2d 88 (1972); *Welling v. Mount Si Bowl, Inc.,* 79 Wn.2d 485, 487 P.2d 620 (1971). Thus, where a motion for summary judgment is made, it is the duty of the trial court to consider all evidence and all reasonable inferences therefrom in a light most favorable to the nonmovant. *Maki v. Aluminum Bldg. Prods.,* 73 Wn.2d 23, 436 P.2d 186 (1968).

The motion should be granted only if, from all the evidence, reasonable men could reach but one conclusion. CR 56(c); *Meissner v. Simpson Timber Co.,* 69 Wn.2d 949, 421 P.2d 674 (1966). Only when the pleadings, depositions, admissions, and affidavits considered by the trial court do not create a genuine issue of material fact between the parties is the moving party entitled to a summary judgment. *Ferrin v. Donnellefeld,* 74 Wn.2d 283, 444 P.2d 701 (1968).

For the purposes of a summary judgment procedure, an appellate court is required, as was the trial court, to review material submitted for and against a motion for summary judgment in the light most favorable to the party against whom the motion is made. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wn.2d 528, 503 P.2d 108 (1972); *Robert Wise Plumbing & Heating, Inc. v. Alpine Dev. Co.,* 72 Wn.2d 172, 432 P.2d 547 (1967).

Pursuant to the standard for summary judgment set out by CR 56(c) and decisions of this court, a reviewing court must consider not only whether the affidavits, facts, and record of a case have created an issue of fact, but also whether any such issue of fact is material to a cause of action.

■ One of plaintiff's theories of liability was that of strict liability, a theory first applied by this court in *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969), a case of alleged defective manufacture. In that case, this court adopted the Restatement (Second) of Torts § 402A (1965).[2] In *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975), we held that section 402A applied to design defects as well as manufacturing defects. We went on to state, at page 154:

Thus, we hold that liability is imposed under section 402A if a product is *not reasonably safe.* This means that it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer. This evaluation of the product in terms of the reasonable

---

[2] "§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

expectations of the ordinary consumer allows the trier of the fact to take into account the intrinsic nature of the product.

(Italics ours.)

Therefore, under *Tabert,* the question of whether a product is or is not reasonably safe within the reasonable expectations of the ordinary consumer would be a material issue of fact upon which the outcome of the litigation depends. Further, in making this determination, a trier of fact must consider, along with the intrinsic nature of the product, a number of factors, including:

> The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

*Seattle–First Nat'l Bank v. Tabert, supra* at 154.

*Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 411, 553 P.2d 107 (1976).

In the present case, the affidavit presented by the plaintiff in opposition to the motion for summary judgment created at least one genuine issue of fact which is material to this litigation, *i.e.,* whether the hatch cover, as designed and installed, was or was not reasonably safe within the ambit of *Tabert.*

■ Such an issue was created by the testimony within the affidavit produced by plaintiff, which stated, by way of

---

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement (Second) of Torts § 402A (1965).

purported expert opinion, that the design of the escape hatch cover created an unreasonably dangerous condition for cabin attendants. In previous cases, this court has determined that an affidavit containing expert opinion on an ultimate issue of fact was sufficient to create a genuine issue of fact which would preclude summary judgment. *See Morris v. McNicol, supra; Bernal v. American Honda Motor Co., supra.*

The issue of whether the galley escape hatch was not reasonably safe was also raised in the affidavit by the comparison of the DC–10 hatch cover and the Boeing 747 hatch cover. In *Tabert,* we noted that feasibility of minimizing risk is a factual consideration germane to the ultimate fact of whether a product is reasonably safe. The comparison of the two hatches in the affidavit raises the inference that a reasonable alternative which poses less risk is feasible.

█ Defendant contends that the affidavit produced by plaintiff in opposition to summary judgment is not competent evidence to withstand such a motion. Defendant argues that the engineer's affidavit does not comply with CR 56(e)[3] because, among others, the statement about cabin attendants being required to walk backward in performance of some of their duties is not based upon personal knowledge. The record before us, however, does not reveal any motion to strike the affidavit or any portion thereof prior to the trial court's action. Failure to make such a motion waives deficiency in the affidavit if any exists. *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 431 P.2d 216 (1967); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2738 (1973).

A trial court must "consider all evidence *and all reasonable inferences therefrom*" in a light most favorable to the nonmovant. (Italics ours.) *Maki v. Aluminum Bldg. Prods.,*

---

[3]CR 56(e) states, in part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

73 Wn.2d 23, 26–27, 436 P.2d 186 (1968). Viewing the inferences created by the affidavit of plaintiff's engineering witness in a light most favorable to plaintiff, we are satisfied it created an issue of material fact which necessitated the denial of summary judgment. For this reason we do not deem it necessary at this stage of the proceedings to discuss or pass upon the policy issues which seemingly divided the Court of Appeals.

We therefore affirm the conclusion of the Court of Appeals. The trial court's dismissal of the action on summary judgment is reversed, and the cause is remanded for further proceedings.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.