[No. 5374-1-III.   Division Three.   June 30, 1983.]

SAMUEL A. GIORDANO, ET AL, *Respondents,* v. McNEILAB, INC., *Petitioner.*

*John C. Graffe, Jr., Todd M. Worswick,* and *Billett, Comfort & Rosenow,* for petitioner.

*Douglas Takasugi, J. Patrick Aylward,* and *Jeffers, Danielson, Sonn & Aylward,* for respondents.

GREEN, J.—On April 21, 1982, Samuel Giordano brought this action against McNeilab, Inc., to recover for injuries he sustained when a glass ampule shattered as he attempted to open it to administer medication in the course of his duties as a nurse at Central Washington Health Services. He alleged the ampule, distributed by McNeilab, was defective and unreasonably dangerous to the user or consumer. Based on the allegations of his complaint, he moved for partial summary judgment on the issue of McNeilab's liability. Although McNeilab filed several affidavits opposing the motion, it was granted. We accepted discretionary review.

The question presented is whether McNeilab is liable as a matter of law for Mr. Giordano's injuries. Since questions of material fact exist which preclude summary judgment, we reverse.

The record shows the glass ampules are used to store and preserve medication which is administered to patients by injection. Such ampules were state of the art design in the pharmaceutical industry and were routinely tested for safety according to the affidavit of Herman Lutz, Director of Regulatory Compliance for McNeilab. McNeilab's attorney, in an affidavit, quoted portions of Mr. Giordano's deposition in which he stated he opened one or two ampules during each shift as an intensive care nurse. Each ampule is scored so the top portion can be snapped off to provide access to the contents. Mr. Giordano opened the

ampule at issue by holding the lower portion in his left hand, placing a *2- by 2-inch* gauze pad over the top and snapping it off with his right hand. When the top snapped off, the lower portion of the ampule shattered injuring his left index finger. Mr. Giordano stated he snapped the top portion of the ampule away from him because he knew "of instances where people have cut their fingers on glass doing it, and I have to assume that when you get cut there's glass someplace, and any time you break a glass, there's a possibility of glass flying." The deposition also states Mr. Giordano did exercises to increase his finger strength for his hobby, rock-climbing.

Josephine Campbell, a registered nurse at Tacoma General Hospital, averred in an affidavit submitted by McNeilab she was familiar with the type of ampule used by Mr. Giordano. Based upon a review of Mr. Giordano's deposition, it was her opinion, in light of his finger strength, he used excessive force; a 4- by 4-inch gauze pad wrapped around the ampule would have prevented the injury; and

> [t]he ordinary reasonable user of the ampule is a person trained in the medical field. Used in the proper manner, the type of ampule which the plaintiff crushed is not dangerous to the ordinary reasonable user. Although the plaintiff was a person trained in the medical field, *he did not properly use the ampule.*

(Italics ours.)

In a proceeding for summary judgment, the burden is on the moving party to show there is no genuine dispute as to any material fact. The record and all reasonable inferences derived therefrom must be resolved against the moving party and viewed in a light most favorable to the nonmovant. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). After reviewing the record, we agree with McNeilab's contention that at least one genuine issue of material fact exists: whether the ampule was unreasonably dangerous.

The doctrine of strict liability does not impose legal responsibility simply because a product causes harm.

*Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 150, 542 P.2d 774 (1975). It is premised upon the manufacture or design of a product which renders it not reasonably safe, *i.e.,* a product which is "unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer." *Tabert,* at 154; *see also* Restatement (Second) of Torts § 402A (1965); *Bombardi v. Pochel's Appliance & TV Co.,* 10 Wn. App. 243, 518 P.2d 202 (1973). In *Tabert,* at page 154, the court reasoned, "This evaluation of the product in terms of the reasonable expectations of the ordinary consumer allows the *trier of the fact* to take into account the intrinsic nature of the product." (Italics ours.) In *Lamon v. McDonnell Douglas Corp., supra* at 351, the court held this determination is a question of fact:

> [U]nder *Tabert,* the question of whether a product is or is not reasonably safe within the reasonable expectations of the ordinary consumer would be a material issue of fact upon which the outcome of the litigation depends. Further, in making this determination, a trier of fact must consider, along with the intrinsic nature of the product, a number of factors, including:
>> The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.
>
> *Seattle–First Nat'l Bank v. Tabert, supra* at 154.

*Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 411, 553 P.2d 107 (1976).

*Wagner v. Flightcraft, Inc.,* 31 Wn. App. 558, 565, 643 P.2d 906 (1982) also outlined factors to be considered by the trier of fact in determining the reasonable expectations of the consumer:

> the product's utility, safety aspects, available alternatives, feasibility of eliminating unsafe characteristics, feasibility of spreading potential losses, the user's ability to avoid danger, and the user's anticipated awareness of the product's inherent dangers.

Here, the record read in a light most favorable to McNeilab shows that the ampule was state of the art for maintaining sterility of medication; it was intended to be used and was used by medical personnel; an obvious risk of storing medication in a glass container which must be broken to be opened is potential cuts from flying or shattering glass; the danger could be avoided by using a 4– by 4–inch gauze pad; and Mr. Giordano, being a nurse, was aware of the potential risk.

This record creates genuine issues of material fact as to whether the ampule was dangerous beyond the reasonable expectations of its anticipated users. Further, a question of fact exists whether Mr. Giordano properly opened the ampule. Although there may be other issues of fact, these are sufficient to require a reversal for trial.

Reversed.

MUNSON, A.C.J., and MCINTURFF, J., concur.