# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MEDLINE INDUSTRIES HOLDINGS, LP, | No. 59003-4-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

VELJACIC, A.C.J. — Medline Industries Holdings, LP, appeals the trial court's entry of summary judgment in the Department of Revenue's (DOR) favor. Medline argues that it was eligible for the remittance of sales tax paid for the construction of its warehouse in Lacey. Because Medline does not meet its burden of showing it has 200,000 square feet of its warehouse dedicated to wholesale sales, we conclude that Medline does not qualify for remittance under RCW 82.08.820[1] and affirm. Additionally, because Medline's eligibility for remittance is dispositive of the case, we decline to address whether Medline's parent company qualified as its agent when it paid the costs associated with the construction of the Lacey warehouse.

---

[1] Medline is seeking remittance for costs of its warehouse during the 2016-17 tax period. Medline's warehouse tax incentive application for remittance was filed in 2017. Since then, RCW 82.08.820 was amended in 2022. The amendments, however, do not affect our discussion as they focus solely on changing the term "marijuana" to "cannabis" under RCW 82.08.820(2)(e)(iii). As such, we cite to the current version of the statute.

FACTS

I.    BACKGROUND

Medline is wholly owned by Medline Industries, LP (Parent Company). Medline sells medical supplies and equipment in Pennsylvania, Tennessee, Texas, and Washington. The company sells over 500,000 items, including "[s]urgeon's gloves, surgeon's kits, bandages, gauze, adult diapers," etc. Clerk's Papers (CP) at 56. Medline is engaged in both wholesale and retail sales, selling medical supplies to entities like Costco, Target, and Walgreens, while also interacting directly with hospitals and doctors. Medline also works with the Federal Emergency Management Agency to supply critical medical supplies during federally designated emergencies.

II.   MEDLINE'S WAREHOUSE IN LACEY

In 2016, Parent Company[2] entered into a construction contract with Alston Construction Company, Inc. to build a 702,093 square foot warehouse in Lacey. The Lacey warehouse was built to distribute medical supplies and equipment to healthcare providers located in the northwestern region of the United States. Medline opted to build in Lacey based on the Washington Department of Commerce's representations that "Medline qualified for the Warehouse Tax Incentive and the incentive would be provided at the time of project completion." (CP) at 373. Additionally, Medline selected this location because of the warehouse's proximity to customers and the quality of the workforce.

Throughout the course of construction, Alston submitted an "Application and Certification of Payment" each month, detailing completed portions of work and the amount owed by Parent

---

[2] In 2005, Parent Company and Medline executed an administrative services agreement (Agreement). This Agreement permitted Parent Company to provide services to Medline "relating to the administrative, financial and technical functions" of Medline's operations. CP at 377. Pursuant to the Agreement, Parent Company paid "all bills and liabilities, including but not limited to, all Washington State tax liabilities on behalf of Medline." CP at 371.

Company.[3] Parent Company made all payments out of a bank account of which Parent Company was the account holder. This account was "used to hold funds and make payments for U.S.-based Medline entities, including Medline." CP at 615. After the warehouse was completed in October 2017, Parent Company made its final payment and paid all sales tax. The sales tax for this project was over $3 million.

Medline owned the land where the warehouse was built and oversaw operations upon completion of the project. Medline began to store finished goods in the warehouse shortly after it opened. During the relevant tax period, approximately 83 percent of Medline's sales in Washington were fulfilled from the Lacey warehouse. Medline made $454,216,677 in the state, 68.6 percent of which constituted wholesale sales. The Lacey warehouse, however, had only 17,193 square feet dedicated exclusively for wholesale. The remainder of the warehouse intermingled wholesale and retail products, organizing items by their stock keeping unit number.

III.     MEDLINE'S PURSUIT FOR REMITTANCE OF SALES TAX

On January 17, 2017, Medline submitted a warehouse tax incentive application for remittance with DOR. Medline filed an additional application on December 7, 2017. In all applications, Medline indicated that it was both a "[w]holesale business that owns or operates a warehouse" and a "[r]etail business that owns and operates a distribution center." CP at 1165, 1172, 1179, 1186, 1193, 1200. In total, Medline requested remittance for $2,400,471.63 of the sales tax paid toward the construction of the Lacey warehouse.

---

[3] The construction contract did not reference Medline, nor did it indicate Medline was legally obligated to pay the construction costs and sales tax for the project.

On January 18, 2018, DOR denied Medline's application. DOR based its denial on the fact that Medline was engaging in both retail and wholesale sales, which meant that the Lacey warehouse was "not being used exclusively for distribution to retail outlets." CP at 350.

Medline exercised its right to administrative review of DOR's decision. On July 20, 2021, the Administrative Review and Hearings Division (ARHD) for DOR denied Medline's petition. Similar to DOR's decision, the ARHD found that Medline did not utilize 200,000 square feet of the Lacey warehouse exclusively for wholesaling. Based on this fact, the ARHD determined that Medline was ineligible for remittance.

IV.     MEDLINE'S APPEAL TO THE SUPERIOR COURT

On August 19, 2021, Medline appealed the ARHD's decision to the Thurston County Superior Court. Following discovery, both Medline and DOR filed motions for summary judgment.

The trial court held a hearing to consider the motions for summary judgment on October 27, 2023. Unlike DOR or the ARHD, the court focused on the issue of whether Medline paid the sales tax for the construction of the Lacey warehouse, a threshold requirement for being eligible for remittance under RCW 82.08.820. Medline conceded that Parent Company, not Medline, made the payments for the construction contract as well as the sales tax.

The court also questioned DOR about RCW 82.08.820 and the apparent requirement that a wholesaler dedicate at least 200,000 square feet of a warehouse for the qualifying activity. DOR acknowledged that, barring the issue of whether Medline paid the sales tax, Medline would qualify for remittance under a comingled approach because "at least 200,000 square feet would have been devoted to the storing of finished goods for wholesale sale." Rep. of Proc. at 17. DOR, however, maintained that the comingled approach was not appropriate under RCW 82.08.820(3)(a), and

4

Medline did not qualify for remittance since 200,000 square feet was not dedicated exclusively toward goods sold at wholesale.

Ultimately, the court granted summary judgment in DOR's favor and denied Medline's motion for summary judgment. The court reasoned that because Parent Company paid the costs for the construction of the Lacey warehouse, including the sales tax, Medline was ineligible to request for remittance under the exemption. The court declined to address the second issue because the threshold requirement was dispositive of the case.

Medline appeals.

## ANALYSIS

We review orders granting summary judgment de novo, "'engag[ing] in the same inquiry as the trial court.'" *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014) (internal quotation marks omitted) (quoting *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000)). "A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000); CR 56(c). A material fact is a "'fact upon which the outcome of the litigation depends, in whole or in part.'" *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (quoting *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)). We view all submitted facts and reasonable inferences in the light most favorable to the nonmoving party. *Hunt*, 181 Wn.2d at 140.

I.     MEDLINE'S ELIGIBILITY FOR REMITTANCE UNDER RCW 82.08.820[4]

Medline argues that it is a wholesaler under RCW 82.08.820 and the statute does not require a warehouse to dedicate at least 200,000 square feet to the qualifying activity. DOR does not contest that Medline was acting as both a wholesaler and retailer during the relevant period, but it argues that the plain language of RCW 82.08.820 requires a wholesaler to dedicate at least 200,000 square feet to goods sold at wholesale to qualify for remittance. We agree with DOR and hold that RCW 82.08.820 requires a wholesaler seeking remittance for sales tax paid for the construction and/or operation of a warehouse to dedicate at least 200,000 square feet to goods sold at wholesale.

A.     Principles of Statutory Interpretation

Determining whether Medline is eligible for remittance under RCW 82.08.820 requires statutory interpretation. "Interpretation of a statute is a question of law that we review de novo." *Antio, LLC v. Dep't of Revenue*, 26 Wn. App. 2d 129, 135, 527 P.3d 164 (2023), *aff'd*, 3 Wn.3d 882, 557 P.3d 672 (2024).

When interpreting a statute, "[w]e first look to the statute's plain language, giving effect to the legislative intent" while also avoiding "unjust and absurd consequences." *AARO Med. Supplies, Inc. v. Dep't of Revenue*, 132 Wn. App. 709, 717, 132 P.3d 1143 (2006); *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983). Additionally, we consider "the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Cashmere Valley Bank v. Dep't of Revenue*, 181 Wn.2d 622, 631, 334 P.3d

---

[4] Even though the trial court declined to consider Medline's eligibility for remittance under RCW 82.08.820, we have the authority to consider this issue on appeal and affirm the "trial court's disposition of [the] motion for summary judgment" on any basis in supported by the record. *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021); *Pascua v. Heil*, 126 Wn. App. 520, 533, 108 P.3d 1253 (2005).

1100 (2014). If the statute is unambiguous, meaning it is only subject to one interpretation, our inquiry ends. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). If, however, a statute is "'susceptible to two or more reasonable interpretations,'" it is ambiguous. *Id.* (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)). In this scenario, "it is appropriate to resort to aids [of] construction, including legislative history." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002).

An agency's interpretation of a statute is one factor to determine legislative intent. *Waste Mgmt. of Seattle, Inc. v. Util. & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994). "The contemporaneous construction of a statute by officials charged with its enforcement is entitled great weight, 'especially where the [l]egislature has silently acquiesced in that construction over a long period.'" *First Student, Inc. v. Dep't of Revenue*, 194 Wn.2d 707, 718-19, 451 P.3d 1094 (2019) (quoting *All Seasons Living Centers, Inc. v. Dep't of Revenue*, 127 Wn.2d 774, 780, 903 P.2d 443 (1995)). We will not, however, afford deference to an agency's interpretation when it conflicts with the statute. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 815, 828 P.2d 549 (1992).

Generally, "'[t]axation is the rule and exemption is the exception.'" *Stroh Brewery Co. v. Dep't of Revenue*, 104 Wn. App. 235, 240, 15 P.3d 692 (2001) (quoting *Budget Rent-A-Car of Washington-Oregon, Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 174, 500 P.2d 764 (1972)). Consequently, "the taxpayer has the burden of establishing eligibility for an exemption." *Stroh Brewery Co.*, 104 Wn. App. at 240. Tax exemptions are construed narrowly. *Antio*, 26 Wn. App. 2d at 135. "We construe ambiguous tax exemptions 'strictly, though fairly and in keeping with the ordinary meaning of their language, against the taxpayer.'" *Stroh Brewery Co.*, 104 Wn. App. 240 (quoting *Safeway, Inc. v. Dep't of Revenue*, 96 Wn. App. 156, 160, 978 P.2d 559 (1999)).

B.       RCW 82.08.820

RCW 82.08.820 provides remittance to businesses who pay sales tax toward equipment and construction expenses associated with warehouses, grain elevators, and distribution centers. Section one of the statute outlines several requirements that must be satisfied before an individual may seek remittance for sales tax. RCW 82.08.820(1). Section one provides:

> *Wholesalers* or third-party warehousers *who own or operate warehouses* or grain elevators and retailers who own or operate distribution centers, *and who have paid the tax levied by RCW 82.08.020 on*:
>        (a) Material-handling and racking equipment, and labor and services rendered in respect to installing, repairing, cleaning, altering, or improving the equipment; or
>        (b) *Construction of a warehouse* or grain elevator, *including materials, and service and labor costs*,
> are eligible for an exemption[5] in the form of a remittance.

RCW 82.08.820(1) (emphasis added).

Section two defines relevant terms. RCW 82.08.820(2)(a)-(m). Relevant here, a warehouse is "an enclosed building or structure in which finished goods are stored." RCW 82.08.820(2)(l). Finished goods are "tangible personal property intended for sale by a retailer or wholesaler." RCW 82.08.820(2)(e). And square footage is defined as "the product of the two horizontal dimensions of each floor of a specific warehouse." RCW 82.08.820(2)(j).

Finally, section three explains the amount of remittance an entity engaged in a qualifying activity is eligible for. RCW 82.08.820(3)(a) explains that "[f]or warehouses with square footage of two hundred thousand or more. . . , the remittance is equal to one hundred percent of the amount of tax paid for" the actions enumerated in RCW 82.08.820(1)(b). And remittance is "fifty percent of the amount of tax paid for" the actions enumerated in RCW 82.08.820(1)(a).

---

[5] The exemption available under RCW 82.08.820(1) is not a tax credit or a deduction; it is a remittance of the sales tax paid toward the qualifying activities in RCW 82.08.820(1)(a), (b).

Medline argues that as long as a wholesaler has a warehouse that is larger than 200,000 square feet, an entity, regardless of what square footage it dedicates to goods sold at wholesale or retail, is eligible for remittance of sales tax for materials and labor for construction of the warehouse. Medline oversimplifies the requirements outlined in the plain language of the statute.

The requirements for an entity to recover 100 percent of sales tax paid toward construction of a warehouse under RCW 82.08.820 are unambiguous. RCW 82.08.820(3)(a), describing only two exemption amounts, articulates that there is an exemption for warehouses of 200,000 square feet for the wholesaler. There is no exemption for a wholesaler who builds a warehouse of less than 200,000 square feet. *See id.* Since wholesale conduct does not include retail conduct, RCW 82.04.060(1), it necessarily follows that under RCW 82.08.820(3)(a), at least 200,000 square feet must be dedicated to the activities engaged in by wholesalers or third-party warehousers, not retailers.[6]

Disregarding the issue of what entity paid the tax, in its simplest terms, under RCW 82.08.820, Medline would qualify for a remittance of 100 percent of sales tax paid if it was (1) a wholesaler, (2) who incurred covered construction costs for (3) a warehouse with at least 200,000 square feet dedicated to the storage of wholesale goods. RCW 82.08.820(1), (3)(a).

But to be a wholesaler in the first instance, an entity must meet that definition: a wholesaler is one who "makes 'sales at wholesale' as defined in chapter 82.04 RCW." RCW 82.08.820(2)(m). A "[s]ale at wholesale" or "wholesale sale" is "[a]ny sale, *which is not at retail*." RCW

---

[6] In Medline's warehouse tax incentive applications for remittance with DOR, Medline indicated that it owned and operated the warehouse at issue as both a wholesale warehouse and a retail distribution center. On appeal, there is no dispute between the parties regarding Medline's status as a wholesaler and retailer. As a result, Medline is a hybrid entity not explicitly addressed by RCW 82.08.820. But even so, its business conduct is addressed by the statute.

82.04.060(1) (emphasis added). A wholesaler, then, is defined by its conduct—conduct that decidedly does *not* include making sales at retail.

And while retailers who own or operate distribution centers[7] can fall under RCW 82.08.820(1), retailers are not among those who qualify for the exemption for operating warehouses (among other qualifications); rather, section one instead lists only wholesalers and third-party warehousers as those who can qualify for remittance.

### C.      The Lacey Warehouse

The Lacey warehouse is over 700,000 square feet. Although Medline intermingled products for both wholesale and retail sales throughout the warehouse, and Medline's wholesale sales for the relevant tax period consisted of 68.8 percent, Medline dedicated only 17,193 square feet to wholesale sales. This does not satisfy RCW 82.08.820(3)(a).[8] Moreover, the plain language of RCW 82.08.820 does not support a comingled or sales quota approach when determining the square footage of a warehouse, as Medline suggested. Again, RCW 82.08.820(2)(j) defines square footage as "the product of the two horizontal dimensions of each floor of a specific warehouse." This definition supports a strict application of the exemption, only affording remittance to entities

---

[7] A distribution center is "a warehouse that is used exclusively by a retailer solely for the storage and distribution of finished goods to retail outlets of the retailer." RCW 82.08.820(2)(d).

[8] In Medline's reply brief, it argues that the percentage of wholesale sales is sufficient to qualify for remittance, regardless of how much square footage in a warehouse is dedicated to the qualifying activity. But an entity's percentage of wholesale sales has nothing to do with the space utilized in a warehouse, which must relate to square footage, not sales of later product. RCW 82.08.820(2)(j), 3(a). This is so because the tax the remittance applies to is a sales tax relating to the construction of the space and the remittance requires use of that space for a particular purpose. RCW 82.08.820(1), (3)(a). As explained by DOR, allowing an entity to qualify for remittance based on the percentage of sales alone would provide remittance for conduct not covered by the statute. An entity could sell few items at wholesale for significant financial gain, while dedicating a fraction of a warehouse to the storage of such goods, but nevertheless receive sales tax remittance for construction of the entire warehouse.

who dedicate 200,000 square feet of a warehouse to the qualifying activity, which in this case is the storage of goods sold at wholesale.[9]

With RCW 82.08.820's requirements in mind, and assuming without deciding that Medline paid the sales tax associated with the construction of the Lacey warehouse through Parent Company, there is no material issue of fact evident from the record that Medline's wholesale warehousing conduct did not encompass at least 200,000 square feet of its warehouse. Accordingly, Medline is not eligible for the warehouse tax incentive exemption, in the form of remittance, as a matter of law.

Even if we were to assume that RCW 82.08.820 was ambiguous, a review of legislative purpose reveals that Medline's argument against an exclusivity requirement fails.

The legislature enacted RCW 82.08.820 for the purpose of bolstering the "state's overall economic health and prosperity." LAWS OF 1997, ch. 450, § 1. Finding that "[t]he warehouse and distribution industry is critical to other businesses," the legislature sought to "stimulate interstate trade by providing tax incentives to those persons in the warehouse and distribution industry engaged in highly competitive trade." *Id.*

Shortly after the enactment of RCW 82.08.820, DOR issued a special notice interpreting the exemption. Dep't of Revenue, Special Notice—Warehouse Sales Tax Exemption (Apr. 19, 1997, reissued Apr. 2002) https://taxpedia.dor.wa.gov/documents/historical%20special%20notices/special%20notices%201997/sn_97_warehs.pdf [https://perma.cc/D883-WHP9][hereinafter "Special Notice"]; WAC 458-

---

[9] Medline points to the definition of "distribution center," arguing that the legislature's use of the term "exclusive" in that definition, but not in the definition of "warehouse," suggests that this was an intentional omission. Br. of Appellant at 18; RCW 82.08.820(2)(d), (l). When reading RCW 82.08.820 as a whole, however, the use of the term "exclusive" for the definition of "warehouse" is unnecessary because the statute, in effect, is exclusive.

20-18201. Within its Special Notice, DOR specifically addressed a situation where a hybrid entity is engaged in both wholesale and retail sales. Special Notice. DOR explained that when this occurs, "[a] warehouse that accommodates both qualifying and nonqualifying activities must be able to demonstrate that it meets the 200,000 square feet requirement in order to receive the exemption." WAC 458-20-18201(202)(b)(ii). It also provided an example, which is as follows:

> **Example 3.** Company C operates a 500,000 square foot warehouse that it uses to store finished goods for wholesale. Company C also uses the warehouse to fulfill orders directly to its retail customers. The wholesale goods and the products for fulfilling retail orders are intermingled throughout the warehouse. Company [C]'s warehouse *does not qualify for the exemption because it does not dedicate 200,000 square feet of the warehouse's physical space exclusively to the wholesaling activity, the qualifying activity*.

*Id.* (emphasis added).

Since, DOR's Special Notice, the legislature has amended RCW 82.08.820 several times. Former RCW 82.08.820 (1997), (2006), (2007), (2011), (2012), (2014). And at no point throughout the past 25 years has the legislature repudiated DOR's interpretation of RCW 82.08.820. The legislature's silence speaks volumes. *See First Student*, 194 Wn.2d at 718-19 ("The contemporaneous construction of a statute by officials charged with its enforcement is entitled great weight, 'especially where the Legislature has silently acquiesced in that construction over a long period.'") (quoting *Sehome Park Care Ctr.*, 127 Wn.2d at 780)). Consequently, we afford great weight to DOR's interpretation of RCW 82.08.820 and conclude that to seek remittance of sales tax for the construction and/or equipment handling of a warehouse, an entity must establish that it has dedicated at least 200,000 square feet to the qualifying activity.

Even when viewed in the light most favorable to Medline, the record does not demonstrate an issue of fact that Medline did not dedicate at least 200,000 square feet of the Lacey warehouse to storing goods sold at wholesale. Therefore, Medline cannot satisfy one of the elements of the exemption in RCW 82.08.820(1), (3)(a), and DOR is entitled to judgment as a matter of law.

## CONCLUSION

Accordingly, we affirm the trial court's entry of summary judgment in DOR's favor.

Veljacic, A.C.J.

We concur:

Lee, J.

Glasgow, J.