IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARTHUR WEST,<br><br>               Appellant,<br><br>   v.<br><br>LOWER DUWAMISH WATERWAY GROUP, as a subagency and/or the functional equivalent of a public agency subject to the OPMA and/or the PRA, KING COUNTY, CITY OF SEATTLE, PORT OF SEATTLE, BOEING, AND JEFF STERN,<br><br>               Respondents,<br><br>  and<br><br>SKIP FOX, TOM NEWLON, ELAINE BILD, JOHN AND JANE DOE LDWG BOARD MEMBERS 1-5,<br><br>               Defendants. | No. 87289-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Respondents King County,[1] City of Seattle, Port of Seattle, and The Boeing Company entered into an administrative consent order with federal and state authorities regarding contamination within the Lower Duwamish Waterway.

---

[1] Below and on appeal King County represents Jeff Stern, who West named as an individual defendant in his lawsuit in the context of his claims against King County and other respondents.

Respondents voluntarily entered into a Memorandum of Agreement (MOA) to coordinate their independent responsibilities under the consent order, collectively referring to themselves as the "Lower Duwamish Waterway Group" or "LDWG." Arthur West sued the LDWG and respondents as its "agency partners," alleging that the LDWG engaged in clandestine business activities in violation of the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW.

West now appeals pro se the trial court's order granting summary judgment dismissal in favor of the respondents and denying his cross-motion for partial summary judgment on his OPMA claims. West argues that the trial court erred in determining as a matter of law that the LDWG is not a "public agency" subject to the OPMA under RCW 42.30.020(1). We disagree and affirm.

## FACTS

In 2000 the U.S. Environmental Protection Agency (EPA) and Washington State Department of Ecology issued an administrative consent order under the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)[2] and Washington's Model Toxics Control Act (MTCA) regarding contamination of the Lower Duwamish Waterway in Seattle.[3] The consent order provided that the respondents were jointly and severally responsible for the preparation of, performance of, and reimbursement of costs incurred by the EPA and the Department for a river-wide "Remedial Investigation and Feasibility Study."

Separate from the consent order, the respondents voluntarily entered into a

---

[2] 42 U.S.C. §§ 9601-75.
[3] The MTCA has been recodified since the issuance of the consent order from chapter 70.105D RCW to chapter 70A.305 RCW. See LAWS OF 2020, ch. 20, §§ 101-103, 2030.

"Lower Duwamish Waterway Group Memorandum of Agreement" (MOA) to cooperate "with each other with respect to certain activities related to sediments in the Lower Duwamish Waterway." Under the MOA, respondents referred to themselves collectively as members of the "'Lower Duwamish Waterway Group' or 'LDWG.'" The MOA stated that it "shall remain in effect until completion of the [consent order] or until [the MOA] is terminated by the LDWG." The respondents agreed under the MOA to share costs for the feasibility study on an interim or per capita basis. The respondents "agree[d] that payments made under this MOA constitute an interim allocation for participation under this MOA and do not represent an allocation of responsibility for investigation or cleanup of the Lower Duwamish Waterway." Instead, "[e]ach member [of the LDWG] shall be individually responsible for its activities and obligations under this MOA, and no action undertaken by one Member shall create or impose liabilities on any other member." The MOA further provides that any member of the LDWG may withdraw from the MOA upon written notice to the other members.[4]

In 2023 West sued the respondents under the OPMA, alleging that the LDWG deliberated and made decisions outside the purview of the public in violation of the Act.[5] In his complaint, West alleged that "by legislative action and acting pursuant to state and/or federal statues, [respondents] created the [LDWG]." West requested a declaratory judgment regarding whether the LDWG must comply with the OPMA and requested other related relief, including an injunction and constitutional and statutory

---

[4] The record also includes a sixth amendment to the MOA, which "applies MOA contracting, invoicing and grant procedures that reflect current LDWG practices." The amendment states that "[a]ll terms and provisions in the MOA remain in effect, except as expressly supplemented and modified herein."

[5] West also raised claims under the Public Records Act (PRA), chapter 42.56, which are not at issue on appeal.

writs of mandamus.

On August 9, 2024, Boeing moved for summary judgment. That same day King County, City of Seattle, and Port of Seattle jointly moved for summary judgment. In their motions, respondents argued that the LDWG is not a public agency subject to the OPMA because it was not created pursuant to statute but instead originated from the MOA that the respondents voluntarily entered into in 2000. In support, both Boeing and King County, jointly with City of Seattle and Port of Seattle, submitted the MOA as an exhibit.

West filed a cross-motion for partial summary judgment on his OPMA claims and opposed respondents' summary judgment motions. In both his summary judgment motion and opposition, West generally asserted that the LDWG was created pursuant to "law" and that it is the functional equivalent of an agency under the OPMA.

The trial court granted respondents' motions for summary judgment dismissal and denied West's motion for partial summary judgment.[6] West filed a motion for reconsideration, which the trial court denied. West appeals.

## DISCUSSION

The purpose of summary judgment is to avoid a useless trial. Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). We review a trial court's order granting summary judgment de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Our review is limited to the record and issues before the trial court. Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co., 19 Wn. App. 2d 210, 221, 494 P.3d 450 (2021) (citing RAP 9.12).

---

[6] The trial court's order, along with West's OPMA and declaratory judgment claims, dismissed West's claims under the PRA.

4

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "The party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact. The burden then shifts to the nonmoving party to present evidence that an issue of material fact remains." Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022) (citation omitted). The nonmoving party avoids summary judgment when it sets forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact. Ranger Ins. Co., 164 Wn.2d at 552. "There is a genuine issue of material fact if reasonable minds could disagree on the conclusion of a factual issue." Mihaila v. Troth, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). If there are no genuine disputes as to the material facts, then summary judgment can be determined as a matter of law. See Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003).

We consider all facts and reasonable inferences in the light most favorable to the nonmoving party. Mountain Park Homeowners Ass'n v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). However, a nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on affidavits considered at face value." Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986). Affidavits comprised of conclusory statements without sufficient factual support cannot defeat a summary judgment motion. CR 56(e); Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993). We may affirm the trial court's grant of summary judgment on any basis supported by the record. Johnson v. Liquor & Cannabis Bd., 197 Wn.2d 605, 611, 486 P.3d 125 (2021).

The OPMA is "Washington's comprehensive transparency statute." Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 434, 395 P.3d 1031 (2017). Our legislature enacted the OPMA as part of a nationwide effort to make government activities more accessible and transparent. West v. Wash. Ass'n of County Officials, 162 Wn. App. 120, 131, 252 P.3d 406 (2011) (citing LAWS OF 1971, 1st Ex. Sess., ch. 250). The OPMA "seeks 'to ensure public bodies make decisions openly'" and its purpose "'is to allow the public to view the decision[-]making process at all stages.'" Beauregard v. Wash. State Bar Ass'n, 197 Wn.2d 67, 73, 480 P.3d 410 (2021) (internal quotation marks omitted) (quoting Miller v. City of Tacoma, 138 Wn.2d 318, 324, 979 P.2d 429 (1999); Cathcart v. Andersen, 85 Wn.2d 102, 107, 530 P.2d 313 (1975)). It is the intent of the Act that the actions of "all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof" "be taken openly and that their deliberations be conducted openly." RCW 42.30.010.

Under the OPMA, except as otherwise provided, "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency." RCW 42.30.030(1). "The OPMA's purpose is to permit the public to observe the steps employed to reach a governmental decision. The intended result is to ensure government accountability to the public by demonstrating that publicly funded agencies are functioning as intended." West, 162 Wn. App. at 131 (citations omitted). Courts must liberally construe the OPMA "to ensure that its purpose is accomplished." West v. Walla Walla City Council, 34 Wn. App. 2d 195, 203, 567 P.3d 634 (2025) (citing Eugster v. City of Spokane, 110 Wn. App.

6

212, 222, 39 P.3d 380 (2002); RCW 42.30.910).

To ascertain the meaning of the OPMA, we look first to its language and give effect to the language's plain meaning if it is not ambiguous. West, 162 Wn. App. at 130 (citing Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006)). "When interpreting a statutory provision, courts 'must give meaning to every word in a statute.'" Smith v. Wash. State Dep't of Lab. & Indus., 22 Wn. App. 2d 500, 511, 512 P.3d 566 (2022) (quoting Bennett v. Seattle Mental Health, 166 Wn. App. 477, 483, 269 P.3d 1079 (2012)). If a statute's language is ambiguous, we resort to tools of statutory construction to ascertain its meaning. West, 162 Wn. App. at 130 (citing Cerrillo, 158 Wn.2d at 201). A statute is ambiguous if it is susceptible to more than one reasonable interpretation. Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd. for King County, 127 Wn.2d 759, 771, 903 P.2d 953 (1995). This court "cannot rewrite or modify the language of the statute under the guise of statutory interpretation or construction. Rather, we must give full effect to the plain language of the statute, 'even when the results may seem unduly harsh.'" Graham Thrift Grp., Inc. v. Pierce County, 75 Wn. App. 263, 267-68, 877 P.2d 228 (1994) (citations omitted) (quoting Geschwind v. Flanagan, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993)).

The OPMA defines a "public agency" as:

> (a) Any state board, commission, committee, department, educational institution, or other state agency which is created by or pursuant to statute, other than courts and the legislature. This does not include a comprehensive cancer center participating in a collaborative arrangement as defined in RCW 28B.10.930 that is operated in conformance with RCW 28B.10.930;
> (b) Any county, city, school district, special purpose district, or other municipal corporation or political subdivision of the state of Washington;
> (c) Any subagency of a public agency which is created by or pursuant to statute, ordinance, or other legislative act, including but not

limited to planning commissions, library or park boards, commissions, and agencies;
    (d) Any policy group whose membership includes representatives of publicly owned utilities formed by or pursuant to the laws of this state when meeting together as or on behalf of participants who have contracted for the output of generating plants being planned or built by an operating agency.

RCW 42.30.020(1)(a) (emphasis added). A "governing body" is defined under the OPMA as "the multimember board, commission, committee, council, or other policy or rule-making body of a public agency, or any committee thereof when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment." RCW 42.30.020(2) (emphasis added).

West contends that the LDWG is a coordinating agency created "pursuant to" statutory mandates under the CERCLA, the MTCA, and the Water Pollution Control Act (WPCA), chapter 90.48 RCW. He cites West, wherein this court considered whether the Washington Association of County Officials (WACO) was a public agency subject to the OPMA. 162 Wn. App. at 125, 127-28, 130-35. West argues that "[l]ike the WACO entity in [West], LDWG exists because federal and state statutes (CERCLA, [the WPCA], and MTCA) required the creation of the LDWG to coordinate action across multiple jurisdictions to remediate contaminated waters of statewide significance."

In West, this court determined that because WACO was not a state board, commission, committee, department or educational institution, it "must qualify as an other state agency which is created by or pursuant to statute" to meet the statutory definition under RCW 42.30.020(1)(a).[7] Id. at 131 (internal quotation marks omitted).

---

[7] RCW 42.30.020 has been amended since this court's decision in Wash. Ass'n of County Officials, but because the language relevant to this opinion's analysis has remained the same, we refer to the current version. See LAWS OF 2022, ch. 71, § 11.

The court observed that "state agency" was not expressly defined by the OPMA and held that a "'state agency' may be an association or organization created by or pursuant to statute which serves a statewide public function." Id. at 131-32. Referring to our state Supreme Court's decision in Cathcart v. Andersen, the court stated that an entity is created "pursuant to statute" under RCW 42.30.020(1)(a) "'if it is created in conformity with or in the course of carrying out [a statute], implying that what is done is in accordance with an instruction or direction.'" Id. at 132 (alteration in original) (quoting Cathcart, 85 Wn.2d at 104). Therefore, RCW 42.30.020(1)(a) "requires that an enabling statute exist prior to or be enacted simultaneously with the creation of an entity carrying out a statewide public function." Id.

Because the legislature formally created WACO as a statewide coordinating agency or "recognized public agency" in 1959, the court held that WACO was "created 'pursuant to' statute as required under the OPMA" and "satisfie[d] the statutory definition of 'public agency' [under RCW 42.30.020(1)(a)] outright." Id. at 132-33 (citing LAWS OF 1959, ch. 130, § 1 ("The necessity and the desirability of coordinating the administrative programs of all of the counties in this state is recognized by this act.")). The court further explained that it was WACO's own efforts for statutory recognition and authorization to receive public funds as a statewide coordinating agency that caused its creation under the statute and "[t]he fact that WACO initially conducted itself as a purely professional association among the state's county officials does not abrogate its decision to become a recognized public agency in 1959." Id.

Comparatively, the Supreme Court held in Beauregard v. Washington State Bar Ass'n that because the state bar association existed as a voluntary association before

the state bar act of 1933, it was not created "pursuant to statute" under RCW 42.30.020(1)(a) to constitute a public agency under the OPMA. 197 Wn.2d at 74, 76 (citing Cathcart, 85 Wn.2d at 104). The court held that though the state bar act of 1933 made WSBA membership mandatory to practice law and listed additional powers and responsibilities for the WSBA, "the state bar act did not create the WSBA." Id. at 75-76.

In the instant case, the record supports that the LDWG's origin derives from the respondents' MOA that they entered into solely of their own accord to coordinate their efforts, including sharing costs, in fulfilling their independent obligations under the consent order. West points to no provision under the CERCLA, the MTCA, or the WPCA to show that the LDWG, like WACO, was created pursuant to an enabling statute. In his briefing, West's argument only provides general references to these acts.[8] His argument also does not include precise citation to the record, broadly citing to page ranges that refer to various filings without specifying the information we are to glean from them. West's broad citation to the record, for example, includes counterarguments in Boeing's motion for summary judgment as well as references to the CERCLA, the MTCA, and the WPCA in irrelevant contexts.

We hold West as a pro se litigant to the same standard as an attorney. In re Est. of Little, 9 Wn. App. 2d 262, 274 n.4, 444 P.3d 23 (2019); West, 162 Wn. App. at 137 n.13. As such, his arguments must comply with RAP 10.3, which provides parties with briefing instructions necessary for this court's review. State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999); see West, 162 Wn. App. at 137 n.14. The rule requires

_____

[8] In the table of authorities to his opening brief, West cites RCW 90.48.030 of the WPCA, which grants the Department "jurisdiction to control and prevent the pollution of streams, lakes, rivers, ponds, inland waters, salt waters, water courses, and other surface and underground waters of the state of Washington."

an appellant to support their arguments with citation to legal authority and references to the relevant portions of the record. RAP 10.3(a)(6). A party's citations to legal authority in support of their position on appeal should relate to the issues presented for review and support the proposition for which that authority is cited. Litho Color, Inc. v. Pac. Employers Ins. Co., 98 Wn. App. 286, 305, 991 P.2d 638 (1999). We need not consider arguments unsupported by meaningful analysis or authority. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We conclude that West fails to show that the LDWG was created pursuant to a statute under RCW 42.30.020(1)(a).

West contends that this court should, for the first time, extend the functional equivalent test under Telford v. Thurston County Board of Commissioners to determine whether the LDWG is a "public agency" subject to the OPMA. See 95 Wn. App. 149, 161-66, 974 P.2d 886 (1999). The Telford court held that the "hybrid" WACO and Washington State Association of Counties (WSAC), which had some attributes of local agencies and some attributes of private ones, constituted agencies subject to the Public Records Act (PRA), chapter 42.56.[9] Id. The PRA, another government transparency law, defines "agency" in relevant part as encompassing "all local agencies," which consists of "every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency." RCW 42.56.010(1)

---

[9] In 2005 the legislature recodified and renamed the Public Disclosure Act (PDA), former chapter 42.17 RCW (1973), as the PRA, chapter 42.56 RCW. See LAWS OF 2005, ch. 274, § 103. For clarity, we refer to the statute by its current name.

(emphasis added).[10] The Telford court determined that the statute was ambiguous as applied to WACO and WSAC because they would have to "qualify as 'other local public agenc[ies]'" to be subject to the PRA, which was undefined. 95 Wn. App. at 156-58 (alteration in original) (quoting RCW 42.56.010(1)). The court adopted a balancing test derived from case law interpreting the federal Freedom of Information Act (FOIA)[11] to determine whether the PRA applies to a certain private or quasi-private entity, setting forth four factors: (1) the entity's performance of a governmental function, (2) the level of the entity's government funding, (3) the extent of government control over the entity, and (4) whether the entity was created by the government. Id. at 161-66.

Telford is not helpful to the question of whether the LDWG is a public agency under RCW 42.30.020(1) because, as the court observed in West, "[t]he Telford court did not discuss the OPMA." 162 Wn. App. at 129. Here, West does not present evidence that the LDWG was created by or pursuant to a statute as required under the plain language of RCW 42.30.020(1)(a). Because an application of the Telford factors to the LDWG would require us to turn a blind eye to this express requirement under the OPMA, we decline West's invitation to do so.[12] See Five Corners Fam. Farmers v.

---

[10] RCW 42.56.010 has been amended since the Telford decision, but the relevant language under subsection .010(1) remains the same.

[11] 5 U.S.C. § 552.

[12] For this reason, we also decline West's argument that the State Attorney General Opinion No. 5 (1991) supports the application of the Telford factors to the issue of whether the LDWG is a public agency under the OPMA. In addition to not being binding on this court, we observe that the AGO noted in its analysis regarding whether the nonprofit corporation Small Business Export Finance Assistance Center (EAC) was an agency subject to the OPMA or the PRA that the EAC was "authorized to be formed under chapter 24.03 RCW." 1991 Op. Att'y Gen. No. 5, at 2, https://www.atg.wa.gov/ago-opinions/public-records-open-public-meetings-act-corporations-small-business-export-finance; see City of Pasco v. Dep't of Ret. Sys., 110 Wn. App. 582, 592 n.11, 42 P.3d 992 (2002) ("Attorney General Opinions are not binding on the court and we may disregard them."); see also Telford, 95 Wn. App. at 162 & n.17 (discussing 1991 Att'y Gen. Op. No. 5). This is not persuasive to the instant record.

State, 173 Wn.2d 296, 312, 268 P.3d 892 (2011) ("To be reasonable, an interpretation must, at a minimum, account for all the words in a statute.").

In his reply brief, West cites the Supreme Court's recent decision in Horvath v. DBIA Services, which applied the Telford four-factor balancing test in its determination that private nonprofit corporation DBIA Services was the functional equivalent of a government agency subject to the PRA. No. 103339-7, slip op. at 12-17 (Wash. Dec. 18, 2025), https://www.courts.wa.gov/opinions/pdf/1033397.pdf. Like Telford, however, Horvath does not discuss the OPMA. Horvath thus does not control our application of the plain language under RCW 42.30.020(1)(a). Likewise, additional cases that West cites that endorsed or applied the Telford factors in analyses specific to the PRA with no mention of the OPMA are neither controlling nor persuasive to the present matter. See generally Worthington v. WestNET, 182 Wn.2d 500, 341 P.3d 995 (2015); Fortgang v. Woodland Park Zoo, 187 Wn.2d 509, 387 P.3d 690 (2017).

West otherwise provides no authority to contradict our interpretation.[13] See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372, P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

CONCLUSION

West fails to show that the LDWG is subject to the OPMA as a state agency created by or pursuant to statute under RCW 42.30.020(1)(a). Accordingly, we hold that

---

[13] At certain points in his briefing, West provides fictitious quotations from existent cases. We rebuke such lack of candor as detrimental and offensive to the legal process and not worthy of judicial review. Everyone, including pro se litigants, are responsible to confirm their pleadings, motions, briefs, and other filings are accurate and do not contain any citations that are invented or hallucinated by generative artificial intelligence (AI) or any other source. See RAP 10.3(a)(6); West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).

the trial court did not err by granting summary judgment dismissal in favor of the respondents.[14]

We affirm.[15]

_Coburn, J._

WE CONCUR:

_Bui, J._

_Feldman, J._

---

[14] We similarly decide that the trial court properly denied West's motion for reconsideration.

[15] We also deny West's motion to supplement the appellate record under RAP 9.11. Though respondents did not oppose the motion, a movant must satisfy six elements to prove that additional evidence is necessary to resolve the case under RAP 9.11(a). Because West submits the additional evidence only in furtherance of his argument that the LDWG is the functional equivalent of a government agency under Telford and Horvath, he fails to show under RAP 9.11(a) that the "additional proof of facts is needed to fairly resolve the issues on review" and that "the additional evidence would probably change the decision being reviewed." Even if West could meet the six criteria under RAP 9.11(a), which he has not, the additional evidence would not change our analysis.